LAWYERS CO-OPERATIVE PUBLISHING COMPANY, Respondent-Appellant, v, STATE OF NEW YORK, Appellant-Respondent. (Claim No. 52210.)

Fourth Department, March 6, 1975.

Louis J. Lefkowitz, Attorney-General (Richard Dorsey and Ruth Kessler Toch of counsel), for appellant-respondent.

Nixon, Hargrave, Devans & Doyle (G. Robert Witmer, Jr., and Norwood K. Banks of counsel), for respondent-appellant.

MAHONEY, J. These are cross appeals by the State and claimant from a judgment of the Court of Claims in a highway appropriation claim. In our initial consideration of these appeals (*Lawyers Co-op. Pub. Co. v. State of New York*, 45 A D 2d 927) we sustained the trial court's determination that the highest and best use of the subject premises was as an industrial park, upon which use classification fair market value was to be predicated; and we held that the trial court properly rejected the State's comparable sales of industrial raw acreage. Inadequacy of computation rationale by the trial court in its initial decision, however, foreclosed appellate review on its ultimate valuation, necessitating remand for further findings. In accordance therewith, a supplemental decision of the trial court has been filed in which the initial determination of value of $8,500 per acre, totaling an award of $155,150, was reaffirmed with explanatory rationale for variance with claimant's evidentiary proof submitted. On the trial, claimant's appraiser offered 17 comparables, with 6 identified as Sales 2, 8, 12, 14, 16 and 17, being selected as most significant. Of these 6 comparables, 4 being industrial park sales and 2 being unimproved industrial land sales, the appraiser made judgment adjustments for 5 variables covering trends of time, availability of utilities, topography, location and planning, concluding with a fair market value of the subject property of $11,000 per acre. With the rejection of the State's comparable sales, there remains no range of evidence regarding valuation, so that the only valid evidence in the record of the market value of the subject property at the date of appropriation is that of the claimant's appraiser. The trial court was, therefore, obliged either to accept this evidence of valuation or supply an explanatory rationale for reaching a different valuation (*Clearwater v. State of New York*, 30 A D 2d 883).

An analysis of the trial court's supplemental decision herein indicates that determined valuation of $8,500 per acre is derived

essentially from two of claimant's comparables, being Sales 16 and 17, which represented unimproved industrial land sales. These sales were given more weight by the trial court because of their "close proximity to the subject parcel" and because only these two of claimant's six most significant comparables were located in the Town of Webster, being the same township in which the subject property is situated.

In light of determination of the highest and best use of the subject property, being that of an industrial park, the trial court's exclusive reliance upon comparable Sales 16 and 17, involving raw undeveloped industrially zoned land, was improper considering that four other comparables representing sales of industrial park property were in evidence. While Sales 16 and 17 were included by claimant's appraiser only to present sales from Webster Township, both sales were disparaged by him as poor comparables which undoubtedly account for the fact that the properties required net adjustments of 87% and 142% respectively. Exclusive reliance by the trial court upon such grossly adjusted properties, under the evidence here presented, is not warranted when four other sales of industrial park property were available to the court. Although these remaining comparables were not located in the Township of Webster, their probative value is not foreclosed so long as such sales are properly adjusted for economic trends in the particular areas, assuming that a differential in property valuation between various geographical areas exists. In evaluating the subject property as an industrial park, proximity to urban centers and access to major transportation systems within the area are of prime consideration. The primary consideration, therefore, is not how close the comparable property is to the subject property but, rather, what comparison can be drawn between the comparable sales and the subject property in terms of its proximity and accessibility to the urban center.

Therefore, directing attention to claimant's remaining four comparables, all representing sales of industrial park lands, it is significant that claimant's appraiser characterized Sales 8 and 12 as particularly comparable to the subject property. Sale 8 is located in the Rochester-Henrietta Industrial Park and Sale 12 is in the Chili Industrial Park. After appropriate adjustments to the sale price of said parcels, for economic trend, topography, location and planning, claimant's appraiser indicated an adjusted market value for these comparables of $11,190 and $11,453 respectively. The adjustments to these properties, ranging from 4% to 11% for any one item, would appear rea-

sonable with one exception, being that adjustment made for "utilities". It is evident from claimant's appraiser's adjustment grid that the subject property was valued as if it had all utilities available. Although all necessary utilities such as gas, electric, storm and sanitary sewers were technically "available" to the subject parcel, sanitary sewer lines and other utilities would have to be extended into the interior of the development. Gas, electric and storm sewers available along Publishers Parkway would have to be extended north and south to the lots of individual purchasers. Sanitary sewers, available along the fringe of the subject property on Hard Road and Five Mile Line Road, would have to be extended north and east to reach individual parcels. All such extensions, involving expense, would detract from the purchase price of particular lots. It was estimated by claimant's appraiser that the cost of extending such facilities to interior lots would cost between $10 and $15 per linear foot and in a proposed hypothetical instance could amount to nearly $20,000. In the final analysis, it is undisputed that the subject property was in an early stage of development as an industrial park. While this court was justified in affirming acceptance by the trial court of the industrial park classification as the highest and best use of the subject property, it must be recognized that for purposes of valuation it is inappropriate to compare the subject property on an equal footing with established on-going industrial parks, at least from the standpoint of available utilities. Thus, whereas claimant's appraiser notes that comparable Sale 8 has "all" utilities and therefore makes no adjustment for availability of utilities, a minus 5% (or $700) adjustment to that comparable is warranted. Similarly, whereas sale 12 is noted as having "all +" utilities with a corresponding minus 4% ($450) adjustment made, an additional minus 5% (or $550) to this comparable is also indicated. With these reduction adjustments, the average adjusted values for comparable Sales 8 and 12 amount to a round figure of $10,500 per acre.

The subject property consisting of 18.251 acres, damage to claimant amounts to $191,600. Accordingly, the judgment of the Court of Claims should be modified and an award of $191,600 plus appropriate interest should be entered for claimant.

MARSH, P. J., MOULE, CARDAMONE and DEL VECCHIO, JJ., concur.

Judgment unanimously modified on the law and facts in accordance with opinion and as modified affirmed, with costs to claimant.