■ YONKERS CITY POST No. 1666, VETERANS OF FOREIGN WARS OF THE UNITED STATES, INC., Respondent-Appellant, v JOSEPH BOTTIGLIERI, Appellant-Respondent, and METROPOLITAN TITLE GUARANTEE Co. et al., Respondents, et al., Defendant.— In an action, *inter alia,* to recover damages from a seller of real property for breach of a covenant against encumbrances and from a title insurance company under its title insurance policy, the defendant Bottiglieri appeals and the plaintiff cross-appeals from a judgment of the Supreme Court, Westchester County (Leggett, J.), dated December 21, 1982, which, after a nonjury trial, (1) was in favor of the plaintiff and against the defendants on the third and ninth causes of action, (2) dismissed the other causes of action, (3) directed that the plaintiff recover of the defendants Josanth Realty Corporation (the seller) and Joseph Bottiglieri, and the defendants Metropolitan Title Guarantee Co. and its successor-in-interest jointly and severally, the sum of $29,800, with specified interest, (4) directed that the title insurance companies, the defendants Metropolitan and its successor, recover on their cross claim against the defendant Josanth Realty Corp. and Joseph Bottiglieri the sum of $29,800, and (5) directed that the plaintiff be denied any prejudgment interest.

By decision and order dated October 22, 1984, this court modified the judgment by (1) reducing the principal award to the plaintiff from $29,800 to $19,800, (2) striking the fifth decretal paragraph, which denied the plaintiff recovery of prejudgment interest, and substituting therefor a provision awarding the plaintiff prejudgment interest from September 30, 1974, and (3) directing that the judgment awarded Metropolitan Title Guarantee Co. on its cross claim against the

defendants Josanth Realty Corp. and Joseph Bottiglieri be reduced accordingly, i.e., from $29,800 to $19,800, plus interest awarded to the plaintiff, and we thereupon remitted the matter for entry of an appropriate amended judgment *(Yonkers City Post No. 1666 v Josanth Realty Corp.,* 104 AD2d 980).

By decision and order dated May 29, 1986, the Court of Appeals reversed the order of this court and remitted the matter here for further proceedings *(Yonkers City Post No. 1666 v Josanth Realty Corp.,* 67 NY2d 1029).

Ordered that the judgment is modified, on the law and the facts, by (1) increasing the principal award to the plaintiff from $29,800 to $50,000, (2) awarding the plaintiff prejudgment interest from September 30, 1974, and (3) directing that the judgment awarded Metropolitan Title Guarantee Co. on its cross claim against the defendants Josanth Realty Corp. and Joseph Bottiglieri be increased accordingly, i.e., from $29,800 to $50,000, plus interest awarded to the plaintiff; as so modified, the judgment is affirmed, without costs or disbursements.

When this appeal was originally before this court the judgment was modified, *inter alia,* by reducing the principal award of damages to the plaintiff from $29,800 to $19,800. In reaching that determination we adopted the trial court's calculation of damages to the extent of $19,800 for the fee taking and the permanent easement acquired by the State of New York with respect to the parcel of property in issue.

The Court of Appeals reversed and remitted the case to this court "for consideration of the facts and an explanation of how the damages have been ascertained when the proper rules for establishing damages are applied or for such further action on the record as it deems warranted" *(Yonkers City Post No. 1666 v Josanth Realty Corp., supra,* at 1032). In ruling on the plaintiff's cross appeal, the Court of Appeals concluded that both the trial court and this court had ignored "[t]he general rule * * * that damages for a breach of covenant against encumbrances or a breach of a warranty of title are measured by subtracting the value of the property after the defect is discovered from its value before the defect existed" *(Yonkers City Post No. 1666 v Josanth Realty Corp., supra,* at 1031).

Upon our further review of the record before the trial court and reconsideration of our decision in light of the determination of the Court of Appeals, we conclude that the trial court's calculation of damages was erroneous. The facts leading to

this dispute are set forth in our decision on the prior appeal in this case *(Yonkers City Post No. 1666 v Josanth Realty Corp.,* 104 AD2d 980, *supra),* and need not be repeated here. At the trial, the plaintiff's appraiser submitted a comprehensive appraisal report and testified in support of that report. In calculating the value of the property prior to the partial State appropriation and its value after the appropriation, the plaintiff's expert considered three methods of estimating property value, i.e., the market-value approach, the income-capitalization approach and replacement-cost approach. He rejected outright the replacement-cost approach because he concluded that the improvement on the subject property was not a specialty structure for which that approach would be appropriate. The plaintiff's expert further testified that the State's fee taking for purposes of widening Yonkers Avenue extended across the entire frontage of the subject property running along Yonkers Avenue for about 100 feet and up to the building line. The total property acquired in the fee taking was 1,488 square feet. The State had also acquired a permanent easement for the purpose of constructing slopes and appurtenances thereto which impinged upon a 724-square-foot area of the subject parcel's on-site parking area. The plaintiff's expert concluded that as a result of the State's appropriations the subject property had lost 32% of its physically usable land and approximately 40% of its existing parking area. Moreover, the land had decreased marketability and value because of reduced "privacy and quietude" and the decreased flexibility in developing the property.

The plaintiff's appraiser determined that the highest and best use of the property was for commercial purposes consistent with the Yonkers Zoning Ordinance. Utilizing the market-value approach, the plaintiff's expert determined that the value of the property at the time of the 1974 sale to the plaintiff was $145,000 as improved and $100,000 as unimproved. He arrived at these figures by estimating the market value of the subject property based upon comparables representing sales of similar properties in the surrounding area. He utilized four improved parcel comparables and six comparables of unimproved land or land with improvements of only nominal value. The appraiser made adjustments for six variables covering zoning/utility, area size, land quality, location, public services and motivation. He then analyzed the areas affected by the appropriation and by utilizing the same comparables concluded that the fair market value after the appropriation was $95,000, of which $65,000 represented the value

of the unimproved land. The plaintiff's expert concluded that the land value was diminished by approximately $35,000 (i.e., $100,000 minus $65,000) as a result of the fee appropriation and easement taking and the building value was diminished by about $15,000 for a total of damages calculated as $50,000.

The valuations derived by the plaintiff's expert by means of the market-valuation approach were the subject of extensive cross-examination and were opposed by the testimony of a real estate appraiser called as a witness by the defendant title companies. The plaintiff's appraiser conceded on cross-examination that prior to the State's appropriation, 10 of the 15 feet appropriated on the subject property's frontage could not be built upon without a variance due to the 10-foot setback requirement of the Yonkers Zoning Ordinance. However, in preparing his report, the plaintiff's appraiser considered the existing zoning ordinances with respect to the permitted uses of the property and in his grid analysis made adjustments to the comparables for zoning requirements. The comparables of improved land sales were undermined on the cross-examination of the plaintiff's appraiser because all but one of those sales consisted of buildings valued higher than the land on which they were situated whereas the subject premises involved land valued much higher than its improvement. Moreover, the plaintiff's expert failed to fully investigate the financing in connection with the land sale comparables and, thus, made no adjustment for the category entitled "motivation". The real estate appraiser retained by the title companies accepted 2 of the 6 land sale comparables involving sales of unimproved property as approximate comparables for evaluating the subject property. He disparaged the land sale comparables 3, 4, 5 and 6 as poor comparables based upon location but failed to consider that the plaintiff's expert had made location adjustments in his grid analysis.

The plaintiff's expert also applied an income-capitalization approach in evaluating the subject property utilizing five leases of comparable property with adjustments made for six variables covering zoning/utility, area size, location, improvements, services and parking. He concluded that the damages attributable to the appropriation under this method of valuation were the same as under the market-valuation approach, to wit, $35,000 for the land and $15,000 for the building for a total of $50,000. The rental comparables were also undermined somewhat by cross-examination and the testimony of the title companies' appraiser.

The trial court recognized the defendants' failure to present

adequate rebuttal evidence but rejected the plaintiff's expert's computation of the diminished market value based upon a before and after appropriation measurement. The trial court found that the present tenants of the building on the subject property were suffering no diminution in the use of the building and that, in view of the zoning restriction, expansion to the front of the building was impractical. The trial court further rejected the comparables utilized by the plaintiff's expert based upon his own knowledge of the area and the cross-examination of the plaintiff's expert. In reaching its determination, the trial court considered utilizing the $46,000 figure paid by the State to the defendant Josanth Realty Corporation in 1971, but because it had no means of evaluating the appropriateness of that figure as compensation for the fee taking and easement the court declined to award that amount. Instead, as we described in the prior decision on appeal to this court, the trial court determined damages by multiplying the number of square feet appropriated by the State by a square-foot value established by the plaintiff's expert.

As noted by the Court of Appeals in its decision in this matter, where an adverse party fails to present valid evidence on valuation, the court is obliged to accept the remaining expert testimony unless it "provides a sufficient explanation for its decision and there is other evidence in the record to support the court's determination *(Lawyers Co-op. Pub. Co. v State of New York,* 39 NY2d 760, *affg on opn at* 47 AD2d 122, 124; *Matter of City of New York [A. & W. Realty Corp.],* 1 NY2d 428, 432-433; *Matter of Rochester Urban Renewal Agency v Phillips,* 60 AD2d 752, 753)" *(Yonkers City Post No. 1666 v Josanth Realty Corp.,* 67 NY2d 1029, 1031-1032, *supra).* Having reconsidered our prior determination and upon our review of the record upon remittitur, we are of the opinion that the trial court failed to supply a sufficient explanatory rationale for departing from the valuations of the plaintiff's expert. The appraisal report prepared by the plaintiff's expert was well documented. Although some of the comparables utilized in the evaluation were challenged on cross-examination, even the expert retained by the title companies accepted some of the comparables as appropriate and as to the others the adjustments made by the plaintiff's expert to compensate for any differences were not undermined. Viewed in this light, the trial court's statement that "many of the comparables really are not comparable" is not sufficiently specific and detailed to justify the trial court's disregard of the evidence

presented and its different valuation. Although the building structure itself has not been infringed upon by the appropriation, the fee taking which terminates at the building line thereby diminishes the use and enjoyment of the property. We further note that the $46,000 paid by the State to the defendant Josanth Realty Corp. is additional evidence in the record objectively reflective of the plaintiff's damages. The evaluation of the plaintiff's appraiser utilizing both income-capitalization and market-valuation approaches that the damages suffered by the plaintiff amounted to $50,000 is supported by the evidence and is reasonable when measured against the 1971 award to Josanth Realty Corp. Accordingly, we modify the award by adopting the plaintiff's appraiser's valuation and increasing the award to $50,000 plus appropriate interest. Thompson, J. P., Bracken, Lawrence and Spatt, JJ., concur.