(November 18, 1992)

■ JAY A. KAISER, Appellant-Respondent, v JACK FISHMAN, Respondent-Appellant.—In an action to recover damages for

breach of contract, the plaintiff appeals from a judgment of the Supreme Court, Suffolk County (Thompson, J.H.O.), entered May 7, 1990, which, after a nonjury trial on damages, *inter alia,* awarded him only $60,000 with interest thereon from August 9, 1984, to April 30, 1990, awarded interest on the out-of-pocket expenses the plaintiff incurred from October 1, 1989, and awarded the defendant the contract rate of interest on the principal of the note secured by a second mortgage from May 5, 1982, up until July 2, 1985, and the defendant cross-appeals from so much of the same judgment as awarded the plaintiff $60,000 and computed interest on the plaintiff's mortgage and note at 9% subsequent to July 2, 1985.

Ordered that the judgment is reversed insofar as appealed and cross-appealed from, on the law and the facts, without costs or disbursements, and the matter is remitted to the Supreme Court, Suffolk County, for entry of a judgment in accordance herewith.

The facts underlying this appeal are set forth in the decision and order made upon the parties' prior appeal to this Court *(see, Kaiser v Fishman,* 138 AD2d 456). At present it suffices to note that it has been established that the plaintiff contracted with the defendant for the defendant to construct a dwelling, and the defendant knowingly deviated from the plans and specifications provided by the plaintiff. The resulting dwelling is inferior to that called for by the plans and specifications. Having determined that the proper measure of damages is the cost to cure the defects in construction, we remitted the matter to the Supreme Court for a new trial on the issue of damages.

At the retrial on damages, both parties presented the testimony of expert witnesses to establish the cost to cure the defects in the dwelling. The plaintiff's expert witness, James V. Zizzi, a licensed building contractor with experience in construction of beachfront homes set atop pilings, estimated that it would cost $214,764 to bring the dwelling into conformance with the plans and specifications. He identified the work needed to be done, solicited bids from subcontractors, and factored in the costs for general labor and materials. Zizzi factored in the costs of physically moving the house in order to add six additional pilings to the 14 existing pilings to conform to the original plans, as well as reconfiguring the six pilings that were drilled in incorrect locations. Zizzi's estimate did not provide for the replacement of the nonconforming "two by eight" floor joists installed by the defendant. Rather,

his estimate included the costs of doubling, tripling, or quadrupling, as necessary, the existing floor joists, to render the structure as solid as it would have been had it been constructed with the "two by ten" floor joists called for in the plans. Zizzi also considered the costs of removing and storing landscaping and took into account that retaining walls and the existing driveway would have to be replaced. Additionally, Zizzi factored in the costs of fixing the insulation so as to conform to the plans, as well as the costs of installing an adequate heating system.

The defendant's expert witness, August LaRuffa, a structural engineer also experienced in the design of homes erected on pilings, submitted an estimate of $30,555 to modify the structure. LaRuffa, who inspected the house on two occasions and who reviewed the original plans, recommended, among other things, the addition of flitch plates to reinforce the "whalers" or main girders notched into the pilings, and emphasized that his recommendations were not structurally necessary but, rather, were required to render the structural elements equal to or better than called for by the plans and specifications. Mr. LaRuffa did not provide an estimate of the cost to upgrade the heating system, nor did his estimate provide for the disturbance of the existing pilings or moving the dwelling to insert additional pilings.

Following a nonjury trial, the court determined that it would be an unreasonable and unconscionable waste to remove or destroy the existing habitable house and that any defects which constituted a breach of contract could be cured by strengthening the existing structure. Essentially adopting the defendant's expert's remedial approach, which called for the repair of the structure without physically lifting it off of its pilings, the court awarded the plaintiff $60,000 in cost-to-cure damages, with interest from August 9, 1984, to April 30, 1990, at 9%, and $16,653.21 for out-of-pocket expenses together with interest of $866.42, calculated at a rate of 9% for the period from October 1, 1989, to April 30, 1990. These amounts were offset by the amount due from the plaintiff to the defendant as of the date of the plaintiff's default, May 5, 1982, under the terms of the purchase money mortgage ($49,849.63) together with interest at 16% from May 5, 1982, to July 2, 1985 ($25,214.90) and interest from July 2, 1985, to April 30, 1990, at 9% ($21,670.27). Based upon those figures, the plaintiff's total award amounted to $11,705.38. Asserting that that award is inadequate, the plaintiff now appeals. The defendant cross-appeals from (1) so much of the judgment as

awarded the plaintiff $60,000 in cost-to-cure damages which amount the defendant claims is excessive, and (2) so much of the judgment as computed interest due on the note at 9% after the date of the plaintiff's default. We now reverse the judgment insofar as appealed and cross-appealed from.

Where, on appeal from a judgment rendered after a nonjury trial, it appears that on all of the credible evidence a finding different from that of the trial court would not have been unreasonable, then this Court must weigh the relative probative force of conflicting testimony and inferences (see, Shipman v Words of Power Missionary Enters., 54 AD2d 1052). "It is within the power of this court to grant the judgment which, upon the evidence, should have been granted by the trial court" (Lucenti v Cayuga Apts., 66 AD2d 928, 929, affd 48 NY2d 530). Upon our review of the instant nonjury trial, we find that the trial court erred in holding that the defects in the dwelling could be cured by bracing and amplifying existing support beams and structures without moving the dwelling and inserting additional pilings. The defendant, who at all times was aware of the variations from the plans and specifications, had no license to install only 14 of the 20 pilings called for in the contract, despite his opinion that the dwelling was structurally sound. The evidence adduced at the liability trial revealed various deficiencies in the construction of the dwelling. As to liability, the court previously determined that the defendant deliberately departed from the contract plans and specifications, and hence the more onerous cost-to-cure measure of damages was deemed appropriate. The defendant may not now avoid the consequences of his deliberate failure to comply with the contract terms merely because it would be expensive to properly cure his breach (see, Jacob & Youngs v Kent, 230 NY 239). The contract called for compliance with plans and specifications which the defendant deliberately ignored. The purpose of awarding the plaintiff cost-to-cure damages is to place the plaintiff in the same position he would have been in had the defendant complied with the terms of the contract (see, Bellizzi v Huntley Estates, 3 NY2d 112). The "quick fix" postulated by the defendant's expert would not accomplish this goal.

The plaintiff established that his expert's proposed method of repairs would best place the plaintiff in the position he would have been in had the defendant performed the contract in accordance with the plans and specifications. The defendant's expert did not provide for the correction of all of the defects in construction and failed to conduct a structural

analysis of the loads to be supported by the existing pilings which he believed could be adequately reinforced. We are satisfied that the defendant's expert's method of repair would not have provided the plaintiff with the house that he bargained for. Rather, the true measure of cost-to-cure damages to be awarded in this case must be that which truly cures the plaintiff's losses.

Having determined that the plaintiff's expert's method of cure is the one to be adopted, it follows that the plaintiff's evidence as to the cost of that cure, to wit, $214,764, must be credited, as only the plaintiff adduced proof as to the cost of the necessary repairs. Indeed, the defendant completely failed to offer any evidence as to the costs to fix the dwelling so as to conform to contract plans and specifications, opting only to estimate the cost of insufficient and less expensive remedial measures. "[W]here an adverse party fails to present valid evidence on valuation, the court is obliged to accept the remaining expert testimony unless it 'provides a sufficient explanation for its decision and there is other evidence in the record to support the court's determination' " *(Yonkers City Post No. 1666 v Bottiglieri,* 143 AD2d 267, 271, citing *Lawyers Co-op. Publ. Co. v State of New York,* 39 NY2d 760, *affg on opn at* 47 AD2d 122, 124). The plaintiff's expert, Zizzi, recommended a superior method of cure and his estimate was detailed and thorough. Further, he stated that he could do the necessary repairs for that amount. In contrast, the defendant's expert LaRuffa admitted that he did not know anyone who would actually do the work he proposed for the price he estimated.

Additionally, we find that the trial court erred in awarding interest on damages for breach of contract from August 9, 1984, the date of the commencement of the first trial. A plaintiff in a breach of contract case is entitled to interest from the earliest ascertainable date the cause of action accrued *(see,* CPLR 5001 [b]; *M. C. D. Carbone, Inc. v Town of Bedford,* 98 AD2d 714). The award of interest is founded on the theory that there has been a deprivation of use of money or its equivalent and that the sole function of interest is to make whole the party aggrieved. It is not to provide a windfall for either party *(see, Gelco Bldrs. v Simpson Factors Corp.,* 60 Misc 2d 492). In the instant case, the contract was breached on June 5, 1981, when the defendant turned over title to a dwelling that did not conform to contract specifications, and that is the date from which the trial court should

have awarded interest on the cost-to-cure damages of $214,764.

We also find that the trial court erred in awarding interest with respect to sums expended in the mitigation of damages from the date the second trial commenced, i.e., October 1, 1989. The parties stipulated to the amount expended by the plaintiff in mitigating damages, the dates these expenses were incurred, as well as the daily interest to be computed thereon. While CPLR 5001 (b) permits the court to choose a "single reasonable intermediate date" to compute interest where damages were incurred at various times, there was no need to use such a date since the parties stipulated to the amounts owed. The trial court should have utilized this information and calculated interest on each expenditure from the date which it was incurred. We note that most of the sums expended by the plaintiff in mitigating damages were prior to 1983. Since interest is "simply the cost of having the use of another person's money for a specified period [and] [i]t is intended to indemnify successful plaintiffs for the nonpayment of what is due them" *(Love v State of New York,* 78 NY2d 540, 544) we find that the plaintiff would not have been adequately indemnified if interest were awarded from a date more than five years after the last expenditure.

Finally, inasmuch as the mortgage made no provision for the payment of interest following maturity of the underlying debt, we find that the trial court should have awarded interest on the unpaid balance due on the mortgage at the rate of 16% until the date the defendant exercised his option to accelerate the mortgage, and at the rate of 9% thereafter *(see, Ward v Walkley,* 143 AD2d 415; *Marine Midland Bank v 281 Groton Corp.,* 142 AD2d 941, citing *Metropolitan Sav. Bank v Tuttle,* 290 NY 497, 500; *see also, Emery v Fishmarket Inn,* 173 AD2d 765; *Slutsky v Blooming Grove Inn,* 147 AD2d 208; *Williamson & Co. v Colby Engraving & Rubber Plate Corp.,* 98 Misc 2d 134, 135; *cf., European Am. Bank v Peddlers Pond Holding Corp.,* 185 AD2d 805). Bracken, J. P., Harwood, Miller and Copertino, JJ., concur.