Ricky BAKER, Plaintiff–Appellee,

v.

David Alan DORFMAN, Defendant–Appellant.

No. 1351, Docket 99–7528.

United States Court of Appeals, Second Circuit.

Argued: March 23, 2000

Decided: Sept. 1, 2000

Gregory Antollino, New York, NY, for Plaintiff–Appellee.

Stanley N. Futterman, New York, NY, for Defendant–Appellant.

Before: FEINBERG, JACOBS and STRAUB, Circuit Judges.

JACOBS, Circuit Judge:

Nine months after Ricky Baker was told by an agency of New York City (the "City") that he had tested positive for the human immunodeficiency virus ("HIV"), the City asked him to submit to another test, which revealed that the first result was a false positive. Baker retained David Dorfman, Esq., to sue the City for negligent infliction of emotional distress. The claim was dismissed when Dorfman missed a deadline. Baker unsuccessfully appealed by new counsel.

In this diversity action against Dorfman, Baker pleaded (A) legal malpractice, on the ground that Dorfman's negligence resulted in the loss of Baker's claim against the City, and (B) fraud, on the ground that Dorfman's résumé contained intentional and material misrepresentations that induced the retention. The district court entered partial summary judgment in favor of Baker on the issue of malpractice liability. After a trial on damages and the fraud claim, a jury awarded Baker compensatory damages for Dorfman's malpractice, consisting of $285,000 for pain and suffering, $75,000 in lost wages, and $5,000 in out-of-pocket expenses. The jury found that Dorfman also had committed fraud and awarded $25,000 in punitive damages. Dorfman's motion for a new trial was denied.

The court granted Baker's motion to amend the judgment to include (i) prejudgment interest on the value of the dismissed claim against the City, running from the date of dismissal, and (ii) attorney's fees incurred in the unsuccessful appeal of that dismissal.

On appeal, Dorfman argues that (1) HIV-misdiagnosis is not cognizable under New York law, so that his negligence caused Baker no loss, and that Baker's malpractice claim therefore fails as a matter of law; (2) most of Baker's damages occurred after he discovered that he was HIV-negative, and that the malpractice award was therefore against the weight of

the evidence; (3) Baker's fraud claim was not viable because it failed to allege damages that are separate and distinct from the malpractice claim, as New York law requires; (4) prejudgment interest is unavailable or, in the alternative, was miscalculated; and (5) the attorney's fees award was improper because, *inter alia*, Baker's attorney pursued the unsuccessful appeal on a contingency basis.

We affirm.

## BACKGROUND

### A. HIV Tests and Aftermath

After learning that a person with whom he had been intimate tested HIV-positive, Baker visited Dr. Michael Mullen at Cabrini Hospital in New York City to take an HIV test. Dr. Mullen sent Baker's blood sample to a testing laboratory operated by the Department of Health of the City of New York ("DOH"). On April 20, 1993, Baker was told that the test result was positive.

As a result, Baker suffered deepening depression, withdrew from his friends and former life, and lost self-confidence. The diagnosis "shot [him] . . . to the bottom." He lost weight, had trouble sleeping, and spent weekends abed. He continued to work as an interior designer, but lost ambition and energy, stopped working overtime, lost his freelance design clients, and shelved plans to start his own design firm.

In January 1994, DOH advised Dr. Mullen that Baker should be retested because his blood sample was tested by DOH on a bad day. On January 17, 1994—nine months after he received his original test result—Baker learned that the retest result was negative. Skeptical about the reliability of the retest, and fearful that in reliance on the earlier test he may have placed himself at risk, Baker took several more HIV tests. Each confirmed that he was HIV-negative.[1]

Even after Baker got the good news, his depression continued to deepen, he became

---

1. Dorfman has not argued on appeal that Baker failed to mitigate damages by taking no

confirmatory test after receiving the false positive result.

angry and listless, and though he sought psychiatric counseling, he was unable to resume his prior life. In mid–1994, Baker quit his job; by year end, he moved home to Iowa and eventually took a job.

## B. The Underlying State Litigation Against the City

A legal referral service recommended two lawyers, one of them Dorfman. Baker was impressed by Dorfman's résumé, and paid him a $1000 retainer on February 3, 1994.

On April 12, 1994, Dorfman filed notice of Baker's claim against the City in the New York State Supreme Court. Almost one year later, on March 31, 1995, Dorfman filed the complaint. After two years and substantial discovery, Baker fired Dorfman, and retained Gregory Antollino, Esq., who filed a motion for summary judgment. The City cross-moved for summary judgment, arguing that Baker's notice of claim and his complaint were untimely, on the following theory: notice of claim against a public corporation in New York must be served within "ninety days after the claim arises," N.Y. Gen. Mun. Law § 50–e(1)(a) (McKinney 1999); a negligence cause of action accrues on the date of injury (*i.e.,* the false positive test on April 20, 1993) rather than the date of discovery (*i.e.,* the negative retest on January 17, 1994), *see Rizk v. Cohen,* 73 N.Y.2d 98, 538 N.Y.S.2d 229, 232 n. 3, 535 N.E.2d 282 (1989); Baker's claim against the City therefore accrued when he was misdiagnosed on April 20, 1993, and his notice of claim was untimely after July 19, 1993.

Dorfman was first retained in February 1994, after the time for filing a notice of claim had passed. But New York law allows for a motion for leave to file a late notice of claim within the period of the statute of limitations. *See* N.Y. Gen. Mun. Law § 50–e(5). The New York statute of

limitations on negligence actions against municipalities is one year and 90 days from the date of injury. *See id.* § 50–i(1)(c). Thus, five months remained to seek leave to file a late notice of claim after Dorfman's retention. Dorfman instead filed the late notice of claim without the motion to excuse lateness.

Dorfman's second default involved the statute of limitations for filing the complaint. Dorfman had until July 19, 1994, five months after his February 1994 retention to file the complaint. Dorfman allowed Baker's claim to expire by waiting to file the complaint until March 31, 1995— almost two years after the misdiagnosis and long after the statute had run.[2]

The state trial court granted the City's motion for summary judgment. Baker appealed by new counsel, and the Appellate Division affirmed. *See Baker v. City of New York,* 250 A.D.2d 477, 671 N.Y.S.2d 663, 663 (1st Dep't 1998).

## C. The Federal Action Against Dorfman

On October 9, 1997, Baker commenced this action against Dorfman, who appeared *pro se.* Baker sought a declaration that the state court would have granted leave to file a late notice of claim if Dorfman had filed one, and damages for legal malpractice and résumé fraud.

The district court granted partial summary judgment in Baker's favor, issuing the requested declaration and concluding that Dorfman had committed legal malpractice. The remaining issues, as follows, were presented to the jury: (i) the amount of malpractice damages, (ii) whether Dorfman had committed fraud, (iii) if so, whether punitive damages were warranted, and (iv) the amount of any punitive damages.

The jury awarded $360,000 in compensatory damages, found that Dorfman had

---

**2.** It is unclear on this record when the complaint was actually filed. The record on appeal contains only an unstamped copy of the amended complaint, and the original complaint's filing date is variously referenced by

the parties, the state trial court and the district court as March 31, April 7, and April 10, 1995. Dorfman's filing was untimely as of any of these dates. We adopt the district court's (most generous) March 31 date.

committed fraud, and awarded $25,000 in punitive damages on account of the fraud. The compensatory damages consisted of $285,000 for emotional distress, $70,000 for lost wages, and $5,000 for out-of-pocket expenses. The court entered judgment in the total amount of $385,000 on December 2, 1998.

Post-trial, Dorfman appeared by counsel, and moved for a new trial, which the district court denied. *See Baker v. Dorfman*, No. 97 CIV 7512(DLC), 1999 WL 191531, at *2–*10 (S.D.N.Y. Apr.6, 1999). As to the malpractice claim, the court concluded, *inter alia*, that although Baker suffered a portion of his damages after learning he was HIV-negative, the judgment was not against the weight of the evidence and the damage award was reasonable. *See id.* at *3–*6. As to the fraud claim, the court concluded that Dorfman had defrauded Baker into retaining him through the use of "patent falsehoods and misrepresentations designed to portray himself as an experienced litigator." *Id.* at *7.

For his part, Baker moved post-trial to amend the judgment to add pre-judgment interest and attorney's fees on the state-court appeal. The court amended the judgment by adding $7,312.50 for prejudgment interest on the value of Baker's lost claim, and $11,178.05 for attorney's fees incurred when Baker unsuccessfully appealed the dismissal of his claim against the City. *See id.* at *10–*12.

Final judgment was entered on April 9, 1999, and this appeal by Dorfman followed.

## DISCUSSION

### A. Legal Malpractice

Dorfman challenges the malpractice judgment on the grounds that (1) the mal-

practice caused no loss because Baker's claim against the City was meritless under New York law, and (2) the judgment was against the weight of the evidence because most of Baker's damages occurred *after* he learned he was in fact HIV-negative.

#### 1. Malpractice Damages

■ Under New York law, a claim for legal malpractice has three elements: "(1) the negligence of the attorney; (2) that the negligence was the proximate cause of the loss sustained; and (3) proof of actual damages." *Davis v. Klein*, 224 A.D.2d 196, 637 N.Y.S.2d 137, 139 (1st Dep't 1996) (citation and internal quotation marks omitted); *see also Hanlin v. Mitchelson*, 794 F.2d 834, 838 (2d Cir.1986). Dorfman argues that Baker failed to prove any malpractice loss because a New York cause of action for negligent infliction of emotional distress cannot be predicated on an HIV-test misdiagnosis.

■ As a preliminary matter, Dorfman raises this argument for the first time on appeal.[3] In general, "a federal appellate court does not consider an issue not passed upon below." *Singleton v. Wulff*, 428 U.S. 106, 120, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976); *see, e.g., Burnette v. Carothers*, 192 F.3d 52, 58 (2d Cir.1999). "That rule, however, is one of prudence and not appellate jurisdiction. We retain broad discretion to consider issues not raised initially in the District Court." *Lo Duca v. United States*, 93 F.3d 1100, 1104 (2d Cir.1996). We are more likely to exercise our discretion "(1) where consideration of the issue is necessary to avoid manifest injustice or (2) where the issue is purely legal and there is no need for additional fact-finding." *Readco, Inc. v. Marine Midland Bank*, 81 F.3d 295, 302 (2d Cir. 1996); *see also Coogan v. Smyers*, 134

---

3. At his deposition, Dorfman conceded that "[i]t is now settled law that a wrongful diagnosis indicating that one is HIV positive states a cause of action under New York law." After he retained counsel, Dorfman challenged the validity of Baker's claim against the City in his motion for a new trial, albeit on a

different legal theory than he presses on appeal. The district court held that the argument was waived—because Dorfman had not raised it at trial—and, in any event, that it was meritless. *See Baker*, 1999 WL 191531, at *3.

F.3d 479, 487 (2d Cir.1998). Dorfman's argument presents a pure question of law. We therefore choose to reach the merits. *See, e.g., id.* at 487 (reaching the merits of a "purely legal issue that is easily resolved").

■ "Under New York law, a plaintiff may establish [a claim for negligent infliction of emotional distress] in one of two ways: (1) the 'bystander' theory; or (2) the 'direct duty theory.'" *Mortise v. United States,* 102 F.3d 693, 696 (2d Cir. 1996). Under the "bystander" theory, which is obviously inapplicable,

> a defendant's conduct is negligent as creating an unreasonable risk of bodily harm to a plaintiff and such conduct is a substantial factor in bringing about injuries to the plaintiff in consequence of shock or fright resulting from his or her contemporaneous observation of serious physical injury or death inflicted by the defendant's conduct on a member of the plaintiff's immediate family in his or her presence.

*Bovsun v. Sanperi,* 61 N.Y.2d 219, 473 N.Y.S.2d 357, 358, 461 N.E.2d 843 (1984). Under the "direct duty" theory, a plaintiff suffers emotional distress caused by "defendant's breach of a duty which unreasonably endangered [plaintiff's] own physical safety." *Mortise,* 102 F.3d at 696; *see Kennedy v. McKesson Co.,* 58 N.Y.2d 500, 462 N.Y.S.2d 421, 423–24, 448 N.E.2d 1332 (1983). Baker's physical safety was not unreasonably endangered by the City's negligence, and he does not argue that his claim against the City was a "direct duty" case.

■ However, New York also recognizes a cause of action in cases where there is "an especial likelihood of genuine and serious mental distress, arising from ... special circumstances, which serves as a guarantee that the claim is not spurious." *Johnson v. State,* 37 N.Y.2d 378, 334 N.E.2d 590, 372 N.Y.S.2d 638, 642 (1975) (citation and internal quotation marks omitted). In *Johnson,* the Court of Appeals upheld a claim by a woman who was negligently misinformed by a hospital that

her mother had died. The court held that, in that situation, the requisite "guarantee of genuineness" could be supplied by evidence of the "causation and substantiality of the harm suffered." *Id.* at 643.

■ The Court of Appeals of New York has not yet said whether a negligent HIV misdiagnosis amounts to "special circumstances." But the First Department has held that such allegations state a cause of action: the "erroneous report of an HIV positive finding following blood analysis is a 'special circumstance' that provides assurance that a claim to recover for negligent infliction of emotional distress as a result of the erroneous report is genuine and not spurious." *Schulman v. Prudential Ins. Co.,* 226 A.D.2d 164, 640 N.Y.S.2d 112, 112 (1st Dep't 1996) (citing *Johnson,* 372 N.Y.S.2d at 642, 334 N.E.2d 590); *accord Harvey v. Cramer,* 235 A.D.2d 315, 653 N.Y.S.2d 3, 4 (1st Dep't 1997) ("The distress resulting from a negligent misdiagnosis of HIV is actionable ...."); *see also McLarney v. Community Health Plan,* 250 A.D.2d 310, 680 N.Y.S.2d 281, 283 (3d Dep't 1998) (citing *Schulman* as an instance where "'special circumstances' exist which provide an indication of the genuineness of [the] claim"). As in *Schulman,* the City's lab technicians who "handled [Baker's] blood sample and issued the erroneous report owed a duty of care ... to [Baker], *even in the absence of a direct relationship with him.*" *Schulman,* 640 N.Y.S.2d at 112 (emphasis added).

■ It is settled in New York that people who are negligently exposed to HIV may recover for the emotional distress resulting from their fear of contracting AIDS. *See, e.g., McLarney,* 680 N.Y.S.2d at 282; *Bishop v. Mount Sinai Med. Ctr.,* 247 A.D.2d 329, 669 N.Y.S.2d 530, 531 (1st Dep't 1998); *Brown v. New York City Health & Hospitals Corp.,* 225 A.D.2d 36, 648 N.Y.S.2d 880, 886 (2d Dep't 1996). Dorfman emphasizes that in an AIDS-phobia case, the plaintiff must prove "actual exposure" to HIV. *See Brown,* 648 N.Y.S.2d at 886; *see also McLarney,* 680

N.Y.S.2d at 282. Baker, who may have been able to do that, did not press the point. In any event, the actual-exposure requirement in the AIDS-phobia cases is intended to ensure that the fear is genuine and prevent the courts from being flooded by every person who suffers an accidental cut or prick. The requisite "guarantee of genuineness," which in an AIDS-phobia case is supplied by evidence of actual exposure to infection, is supplied in Baker's case by the positive test result. *Johnson,* 372 N.Y.S:2d at 643, 334 N.E.2d 590; *cf. Fosby v. Albany Memorial Hosp.,* 252 A.D.2d 606, 675 N.Y.S.2d 231, 232–33 (3d Dep't 1998) (upholding negligent infliction of emotional distress claim based on "special circumstances" where defendant unreasonably refused to test for HIV the needle that had pricked the plaintiff). If anything, the anguish of the positive test result is a more direct and predictable emotional impact than the anxiety of having insufficient information.

We therefore predict that the New York Court of Appeals would hold that a cause of action lies for negligent infliction of emotional distress in the case of a negligent positive result on an HIV test.

### 2. *Weight of the Evidence*

Dorfman contends that the damages awarded by the jury—for emotional distress, lost wages, and out-of-pocket expenses—are against the weight of the evidence because most (though not all) of the losses post-dated Baker's discovery that he was HIV-negative. The district court concluded that the jury's award was supported by the evidence.

 We review for abuse of discretion a trial court's denial of a motion for new trial. *See Dailey v. Societe Generale,* 108 F.3d 451, 458 (2d Cir.1997). "This circuit, however, recognizes an exception to this rule: where a district court denies a motion for a new trial made on the ground that the verdict was against the weight of the evidence, such a ruling is not reviewable on appeal." *Id.; see also Robinson v. Cattaraugus County,* 147 F.3d 153, 160 (2d

Cir.1998); *Stonewall Ins. Co. v. Asbestos Claims Management Corp.,* 73 F.3d 1178, 1199 (2d Cir.1995), *modified on other grounds,* 85 F.3d 49 (2d Cir.1996); *see also Haywood v. Koehler,* 78 F.3d 101, 104 (2d Cir.1996) (refusing to review weight-of-the-evidence challenges to both liability and damages findings); 11 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 2807 (2d ed.1995).

 Even if Dorfman's motion for a new trial and his argument on appeal are construed (as they arguably could be) as a challenge to the sufficiency of the evidence supporting the jury's award of compensatory damages (rather than its weight), we would affirm. For one thing, Dorfman failed to oppose (and thereby admitted) Baker's Local Rule 56.1 statement of undisputed facts, which stated that Baker "suffered damages as the result of his initial diagnosis." *See Gubitosi v. Kapica,* 154 F.3d 30, 31 n. 1 (2d Cir.1998) (per curiam) (deeming admitted all material facts contained in an unopposed Rule 56.1 statement). Furthermore, Dorfman makes no good argument as to why as a matter of law Baker's emotional trauma or disequilibrium could not persist in one form or another for a period following the corrected diagnosis. If Dorfman wished to preserve such an argument for review he should have sought a jury charge limiting the period of damages, or requested that the jury apportion damages by time period. *See Muller v. Costello,* 187 F.3d 298, 315 (2d Cir.1999). In any event, construing the evidence (including Dorfman's admission) in the light most favorable to Baker, *see Metromedia Co. v. Fugazy,* 983 F.2d 350, 361 (2d Cir.1992), we are not "satisfied ... that the evidence is so one-sided and contrary to the jury's verdict that there is only one reasonable conclusion as to the proper judgment," *Tyler v. Bethlehem Steel Corp.,* 958 F.2d 1176, 1187 (2d Cir.1992).

### B. Fraud

Dorfman argues that (1) Baker's fraud claim should be dismissed because Baker

failed (as New York law requires) to allege damages for fraud that are separate and distinct from the damages flowing from the malpractice claim, and (2) there was no fraud because the statements in his résumé are mere puffery. Dorfman's first argument is waived because it is raised for the first time on appeal. As to the second argument, we reject Dorfman's characterization.

### 1. *Waiver*

Dorfman concedes that he failed to raise his first argument before the district court. As discussed above, "a federal appellate court does not consider an issue not passed upon below." *Singleton v. Wulff,* 428 U.S. 106, 120, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976). Nor do the circumstances militate in favor of an exercise of discretion to decide the issue.

The complaint does not specify the malpractice or fraud claim in the prayer for punitive damages. If Dorfman had timely raised the argument that fraud damages are unavailable, Baker would have had the opportunity to seek punitive damages in respect of the malpractice claim instead. Whether that claim would have been viable or successful is not something we are in a position to say. In these circumstances, we decline to exercise our discretion to address this untimely argument.

### 2. *Puffery*

 Under New York law, a plaintiff in a fraud action must prove "(1) a materi-al misrepresentation or omission of fact, (2) made with knowledge of its falsity, (3) with an intent to defraud, and (4) reasonable reliance on the part of the plaintiff, (5) that causes damage to the plaintiff." *Schlaifer Nance & Co. v. Estate of Andy Warhol,* 194 F.3d 323, 336 (2d Cir.1999). Dorfman characterizes his statements to Baker and his résumé as mere puffery that does not rise to any material mis-statement. *See Cohen v. Koenig,* 25 F.3d 1168, 1172 (2d Cir.1994) ("[S]tatements will not form the basis of a fraud claim when they are mere 'puffery' . . . ."); *see also Quasha v. American Natural Beverage Corp.,* 171 A.D.2d 537, 567 N.Y.S.2d 257, 257 (1st Dep't 1991).

 Here again, Dorfman casts his argument in terms of the weight of the evidence. "[S]uch a ruling is not reviewable on appeal." *Dailey,* 108 F.3d at 458. But to the extent that Dorfman's argument is that the evidence was insufficient as a matter of law to support the fraud judgment, we reject it.

It can be expected that any professional will convey to potential clients a healthy self-estimation. But as the district court noted, "the evidence at trial established that virtually all of the representations in Dorfman's resume were either false or grossly misleading, and created the false impression for Baker of an experienced litigator." *Baker,* 1999 WL 191531, at *8. The résumé is set forth in the margin.[4]

---

4. Dorfman's résumé contained the following statements:

I have a young, dynamic and growing office engaged in a challenging and highly diversified practice. My work has expanded from representation of private individuals to the representation of developing health care organizations. The practice is broad-ranging, including extensive experience in representing individuals and closely held businesses. Committed to the highest standards of professional performance since the inception of my practice in 1991, I have utilized a "Total Quality Management" system to assure each client's genuine satisfaction. My strong reputation for excellence is earned.

I am admitted to practice in New York, New Jersey and Massachusetts. Additionally, I am admitted to practice in Federal Court in the Southern and Eastern Districts of New York. I received my B.A. with honors in American History at Boston University and then matriculated to the Boston University School of Law where I graduated with honors and was the founding editor of a Law Journal. Recognizing the need for specialized legal education to comprehend the current health care reform, I created the L.L.M. (Master of Laws) in Health Care Law program at New York University School of Law where I produced a Colloquium on Access to Health Care as an editor of a Law Review. I hold leadership

Specifically, the court found that Dorfman made and acknowledged the following misrepresentations:

1. "[H]e opened his own 'practice' not in 1991, as he represented to Baker, but only one month before he met Baker in 1994. Prior to that time, Dorfman had done per diem work involving one appellate argument, and a handful of guardianship trials without a jury."

2. "[T]he first jury he had selected was that which heard this case against him."

3. "[H]e was not even admitted to practice law until 1992."

4. "[A]t the time he gave his resume to Baker in 1994, he was not a member of the New Jersey or Massachusetts bars despite having passed the bar exam in each of those states."

5. "[A]s of 1994, he had not yet represented a single 'health care organization as their attorney.'"

6. "[He] had not 'created' the [L.L.M.] in Health Care Law at NYU, but instead had met with the dean and designed his own individual course of study."

7. "[H]e still has not completed his studies to receive the L.L.M. degree from NYU."

8. "[H]e had not actually taught a course at NYU, but was a tutor."

9. "[H]e had not done any work at all for private companies concerning the Americans with Disabilities Act...."

10. "[T]he 'public company' for which he had done per diem work was the Department of Juvenile Justice...."

11. "[H]e had not done any work in the area of 'labor relations'...."

12. "[T]he 'particularly difficult or important' cases for which he had served as 'special litigation counsel' were landlord-tenant cases that he did on a per diem basis...."

13. "[A]ll of the other cases referenced in his resume were cases in which he acted on a per diem basis hired by counsel."

Dorfman knowingly and with intent to deceive made numerous material misrepresentations concerning his experience and expertise. Baker then reasonably relied on those misrepresentations to his obvious detriment. Accordingly, the fraud judgment—and thus the punitive damages award—is affirmed.

## C. Prejudgment Interest

The district court awarded Baker prejudgment interest on the $360,000 in compensatory damages beginning on the day that Baker's claim against the City was dismissed. Dorfman argues that no pre-

---

positions in four bar associations and contribute my time and expertise to community service groups. I have taught at Boston University and New York University School of Law and regularly lecture at University and Bar Association presentations.

I am currently prepared to represent virtually every type of health care provider from sole practitioners and physician groups to health maintenance organizations (HMO's) and managed care plans. I serve some organizations as counsel; and to other clients I provide specialized services to in-house legal staff. I also act as regular counsel to public and private companies in connection with regulatory issues under the Americans with Disabilities Act. My practice encompasses general representation and litigation, mergers and acquisitions,

and labor relations—as well as providing advice on matters ranging from financial survival to complex reimbursement and other regulatory issues.

I engage extensively in trial and appellate litigation in both federal and state courts. I have been called a "litigator's litigator," often serving as special litigation counsel in cases that are particularly difficult or important.

In addition, I am active in representing banks, real estate companies and individuals in connection with the purchase and sale of real property. I am also a Licensed Real Estate Broker.

Please do not hesitate to contact me for any additional information. [Telephone number omitted.]

judgment interest award is appropriate and the district court's award was in any event miscalculated.

■ In this diversity case, issues bearing on prejudgment interest are governed by New York law. *See Mallis v. Bankers Trust Co.*, 717 F.2d 683, 692 n. 13 (2d Cir.1983); *Spector v. Mermelstein,* 485 F.2d 474, 481 (2d Cir.1973). Section 5001(a) of the New York Civil Practice Law and Rules ("CPLR") provides:

> Interest shall be recovered upon a sum awarded because of a breach of performance of a contract, or *because of an act or omission depriving or otherwise interfering with title to, or possession or enjoyment of, property,* except that in an action of an equitable nature, interest and the rate and date from which it shall be computed shall be in the court's discretion.

N.Y. C.P.L.R. 5001(a) (McKinney 1992) (emphasis added). The district court ruled that "[t]he 'property' of which Dorfman deprived Baker is the value of his cause of action against the City."

■ "CPLR 5001 operates to permit an award of prejudgment interest from the date of the accrual of the malpractice action in actions seeking damages for attorney malpractice...." *Horstmann v. Nicholas J. Grasso, P.C.*, 210 A.D.2d 671, 619 N.Y.S.2d 848 (3d Dep't 1994); *see also Spector,* 485 F.2d at 482; *Quintel Corp. v. Citibank, N.A.,* 606 F.Supp. 898, 914 (S.D.N.Y.1985); *Butler v. Brown,* 180 A.D.2d 406, 579 N.Y.S.2d 79, 80 (1st Dep't 1992). Treating the loss of a claim as the deprivation of "property" within the meaning of CPLR 5001(a) serves the goal of a prejudgment interest award: "to make the plaintiff whole." *Prager v. New Jersey Fidelity & Plate Glass Ins. Co.,* 245 N.Y. 1, 156 N.E. 76, 77 (N.Y.1927); *see also Julien J. Studley, Inc. v. Gulf Oil Corp.,* 425 F.2d 947, 949 (2d Cir.1969) (describing CPLR 5001 as "New York's latest effort to

enforce the policy enunciated by Chief Judge Cardozo in [*Prager* ]"); *Kaiser v. Fishman,* 187 A.D.2d 623, 590 N.Y.S.2d 230, 234 (2d Dep't 1992) ("The award of interest is founded on the theory that there has been a deprivation of use of money or its equivalent and that the sole function of interest is to make whole the party aggrieved."). In order to implement its compensatory goal,

> CPLR 5001(a) is phrased broadly and is designed to obliterate all distinctions that may turn on the form of the action [i.e., the old distinction between actions grounded on intentional torts and on negligence], ... the type of property involved, the nature of the encroachment upon the plaintiff's property interests, or the nature of the damages suffered. Thus, interest is available for the tortious interference with intangible, as well as tangible, property whether or not the property has been physically damaged.

5 J. Weinstein, H. Korn & A. Miller, *New York Civil Practice,* ¶ 5001.05, at 50–19 (1991) (footnotes omitted). "Courts applying § 5001(a) have without qualification awarded interest as a matter of right whenever any tortious conduct causes pecuniary damage to tangible or intangible property interests." *Mallis,* 717 F.2d at 695.

■ The jury valued Baker's claim at $360,000.[5] Baker lost his property interest in that sum when his case was dismissed due to Dorfman's malpractice. The district court properly applied New York law by awarding prejudgment interest on the full value of the lost claim in order to make Baker "whole."

The second question is whether the district court erred by calculating the prejudgment interest from October 1, 1997, the day Baker's claim against the City was dismissed.

---

5. The $25,000 in punitive damages were not included in the prejudgment interest award because (i) they were awarded for Dorfman's fraud, not his malpractice, and (ii) prejudg-ment interest prior to the trial court verdict is unavailable for punitive damages awards, *see Deborah S. v. Diorio,* 160 Misc.2d 210, 612 N.Y.S.2d 542, 542 (1st Dep't 1994).

Dorfman argues that Baker did not lose possession of $360,000 on October 1, 1997; that all he lost on that day was a claim against the City that he hoped sometime would yield a settlement or judgment; and that Baker is not entitled to a windfall. *See Kaiser,* 590 N.Y.S.2d at 234 ("The award of interest ... is not [meant] to provide a windfall for either party.").

These arguments are defeated by the plain language of CPLR 5001(b), which generally directs that interest on the cause of action is computed from the date of accrual:

[I]nterest shall be computed from the earliest ascertainable date the cause of action existed, except that interest upon damages incurred thereafter shall be computed from the date incurred. Where such damages were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date.

N.Y. C.P.L.R. 5001(b) (McKinney 1992). Although Dorfman argues that Baker did not suffer damages until some date uncertain on which he could have collected on the claim that Dorfman lost, there is no later date on which the loss can be said to have been incurred, and Dorfman proposes none. Nor can we choose a "single reasonable intermediate date," because the damages resulting from Dorfman's malpractice were not "incurred at various times." *Id.*

▮ The district court properly determined that October 1, 1997—the date Dorfman's negligent failure to pursue Baker's claim caused the dismissal of Baker's action against the City—was the "earliest ascertainable date the cause of action existed." *Id.*

The district court's approach is consistent with the First Department's decision in *Butler v. Brown,* in which a lawyer was successfully sued for his malpractice in failing to prosecute a claim for malicious prosecution. *See* 579 N.Y.S.2d at 80. The trial court calculated prejudgment interest from the date the malpractice cause of action accrued. The First Department affirmed, even though the lost claim was, at the time of its dismissal, no more than an expectancy. *See id.*

Accordingly, we affirm the district court's award of prejudgment interest.[6]

**D. Attorney's Fees**

▮ The district court also amended the judgment to include $11,178.05 in attorney's fees attributed to Baker's appeal from the dismissal of his action against the City. Legal fees sought as part of a malpractice cause of action are recoverable if the fees "were not merely an incident of the litigation but, instead, constituted consequential damages" of the malpractice. *Affiliated Credit Adjustors, Inc. v. Carlucci & Legum,* 139 A.D.2d 611, 527 N.Y.S.2d 426, 428 (2d Dep't 1988); *see also Hinman, Straub, Pigors & Manning, P.C. v. Broder,* 89 A.D.2d 278, 456 N.Y.S.2d 834, 836 (3d Dep't 1982). Baker's fees were incurred in consequence of Dorfman's malpractice because the appeal attempted to repair the harm done by the malpractice. Much the same way, the appeal was arguably an effort to mitigate the loss, a duty that would not have arisen if there had been no malpractice.

▮ Dorfman challenges the attorney's fee award on three grounds:

1. Dorfman contends that because Baker would not have been able to recover attorney's fees in his state action against

6. The theory of Baker's motion to amend the judgment was not the theory that the district court applied. Baker argued that he would have received in the state trial court prejudgment interest on the $75,000 in lost earnings and out-of-pocket expenses that he would have been awarded had his claim not been dismissed. Baker therefore sought prejudgment interest in this case (essentially) as an aspect of compensatory damages. Whatever the merits of this argument, Baker has waived it because he did not appeal the district court's determination of prejudgment interest.

the City, *see generally Alyeska Pipeline Serv. Co. v. Wilderness Soc'y,* 421 U.S. 240, 247, 95 S.Ct. 1612, 1617, 44 L.Ed.2d 141 (1975), he should not be able to recover the same fees through the backdoor in his malpractice action against Dorfman. Dorfman's premise is incorrect. The attorney's fees Baker sought in his motion to amend the district court's judgment are not fees that the state court may or may not have awarded had Baker been able to pursue his claim; they are consequential damages flowing from Dorfman's culpable conduct, *see Affiliated Credit Adjustors,* 527 N.Y.S.2d at 428, and contribute to making Baker whole.

2. Dorfman argues that Baker's appeal of the dismissal was frivolous and an attempt by Baker (or his new lawyer) to run up the damages caused by the malpractice. It is of no consequence that the appeal failed. An "injured party ... will be allowed to recover the expenses of a proper effort [to mitigate damages] even though it proves unsuccessful." *Den Norske Ameriekalinje Actiesselskabet v. Sun Printing & Publishing Ass'n,* 226 N.Y. 1, 122 N.E. 463, 465 (N.Y.1919); *see also Kenford Co. v. County of Erie,* 108 A.D.2d 132, 489 N.Y.S.2d 939, 949 (4th Dep't 1985), *rev'd on other grounds,* 73 N.Y.2d 312, 540 N.Y.S.2d 1, 537 N.E.2d 176 (1989). The record contains no evidence that the appeal was taken in bad faith. The First Department did not characterize the appeal as frivolous, and the district court ruled that "Baker's decision to appeal was entirely proper and, indeed, wise under the circumstances."

3. Finally, Dorfman argues that attorney's fees are inappropriate because Baker did not prove that he actually paid any fees to his attorney for appealing the dismissal. Dorfman alleges that replacement counsel did not demand payment from Baker because he is representing Baker on a contingency fee basis. The district court found, however, that the attorney's fees it awarded represented "fees paid to [Baker's] attorney."

A district court has broad discretion in determining whether to grant a motion to alter or amend the judgment. *See McCarthy v. Manson,* 714 F.2d 234, 237 (2d Cir.1983) (per curiam). We review the court's decision for abuse of discretion and will reverse only if the court's judgment was based on clearly erroneous factual findings or erroneous legal conclusions. *See id.; see also Innovative Home Health Care, Inc. v. P.T.-O.T. Assocs.,* 141 F.3d 1284, 1286 (8th Cir.1998); 6A James Wm. Moore et al., *Moore's Federal Practice* ¶ 59.15[4] (2d ed.1983).

We cannot say that the court's finding was clearly erroneous. In support of the motion to amend the judgment, Baker's counsel submitted a declaration that "the bill for service on the appeal was ... $11,178.05, as reflected by my billing statement to Mr. Baker.... The total amount [of the legal bills] was based on an hourly rate of $200 per hour that I agreed upon with Mr. Baker." The billing statement attached as an exhibit to the declaration itemizes the services rendered in pursuing the appeal and adds up to $11,178.05.

There is no direct evidence in the record that Baker actually paid the legal fees, but the district court could draw that inference from counsel's declaration that he and Baker had "agreed upon" an hourly rate and that he had rendered a billing statement to his client. Even if (as Dorfman claims) Baker's counsel has accepted a contingency fee arrangement in this action against Dorfman, that does not undermine the finding that the appeal of Baker's action against the City was undertaken on the basis of an hourly fee.

## CONCLUSION

The judgment is affirmed.