626

COACH, INC., Plaintiff–Appellee,

v.

WE CARE TRADING CO., INC., a New York Corporation, Defendant–Appellant.

Nos. 01–7968, 01–9162.

United States Court of Appeals, Second Circuit.

May 20, 2002.

Stephen E. Feldman, New York, NY, for Appellant.

Norman H. Zivin, New York, NY, for Appellee.

Present: McLAUGHLIN, POOLER, and B.D. PARKER, Circuit Judges.

## SUMMARY ORDER

ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, AD- JUDGED, AND DECREED that the judgment of said District Court be and it hereby is **AFFIRMED** in part and **VA-CATED** in part.

Defendant We Care Trading Co., Inc. ("We Care") appeals from a judgment of the district court granting plaintiff Coach, Inc. ("Coach") injunctive relief and attorney's fees and denying We Care's post-trial motions made pursuant to Federal Rules of Civil Procedure 50, 59, 60 and 65. The judgement and subsequent injunction are based on a jury's findings that (1) We Care infringed Coach's trade dress for its classic handbags, which was defined at trial as glove tanned leather, bound edges, brass or nickel-plated brass hardware, and a lozenge-shaped hang tag with a beaded chain, which "is somewhat rectangular in shape with rounded edges and a protrusion on one end which has a hole in it through which the beaded chain may extend so that the beaded chain can attach to the hang tag;" (2) We Care diluted Coach's trademark, the hang tag with the "COACH" mark embossed on it; (3) We Care contributorily infringed Coach's trade dress; (4) We Care did not either directly or contributorily infringe Coach's trademark; (5) Coach was not entitled to damages; and (6) in response to a request for an advisory verdict, that We Care had not acted in bad faith.

After the verdict, the district court denied We Care's post-verdict motions, awarded Coach attorney's fees on its Lanham Act claims, and entered a permanent injunction that enjoined We Care (1) from manufacturing, distributing, or selling certain handbags specified by style number or bags confusingly similar in style to those handbags but bearing a different style number; (2) manufacturing, distributing or selling (a) handbags, tote bags or backpacks that included glove-tanned leather,

bound edges, brass (or nickel-plated brass) hardware, and a lozenge shaped hangtag attached to the bag with a beaded chain or (b) "any confusingly similar trade dress which includes at least the following combination of elements: (i) a handbag comprised of glove-tanned leather (or simulated glove-tanned leather) and bound edges; or (ii) a lozenge shaped hang tag attached to a handbag by a beaded chain wherein the handbag is comprised of glove-tanned leather (or simulated glove-tanned leather) and either bound edges or brass (or nickel-plated brass) hardware (or simulated brass hardware); or (iii) a handbag comprised of glove-tanned leather (or simulated glove-tanned leather), bound edges and brass (or nickel-plated brass) hardware (or simulated brass hardware)"; (3) manufacturing, distributing or selling handbags, tote bags, or backpacks with a hang tag having the same shape as Coach's hang tag whether or not it included the word Coach; and (4) assisting others in carrying out these acts.

On appeal, We Care argues that it is entitled to judgment as a matter of law or a new trial because (1) Coach failed to adequately articulate its trade dress; (2) the court's rulings on functionality were erroneous and prejudicial and plaintiff presented no evidence of non-functionality; (3) the court made erroneous evidentiary rulings; (4) Coach presented no evidence of secondary meaning; (5) Coach did not prove likelihood of confusion; (6) there was no evidence to support the contributory trademark infringement claim; and (7) the court made erroneous rulings on dilution. We Care also seeks reversal of the district court's award of attorney's fees and reversal or modification of its injunction.

Coach argues that we cannot review the district court's denial of We Care's Rule 50 motion because We Care failed to renew this motion at the close of all the evidence and moved only with respect to the trade dress claims. The record demonstrates that We Care moved for judgment as a matter of law only on the trade dress claims and only on the bases that (1) Coach failed to articulate a consistent trade dress and (2) Coach produced insufficient evidence of secondary meaning. We Care did not renew this motion at the close of all evidence. However, Coach itself waived the right to rely on We Care's omission because it did not object in district court. *Gibeau v. Nellis*, 18 F.3d 107, 109 (2d Cir.1994). Although the district court determined *sua sponte* that We Care's Rule 50 motion was barred on procedural grounds, we assume—without deciding—that we can review both the Rule 50 and the Rule 59 decisions. We will reverse the denial of Rule 50 relief only if "the evidence, viewed in the light most favorable to [Coach], is insufficient to permit a reasonable jury to rule in [its] favor." *Galdieri–Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 289 (2d Cir.1998). We reverse the district court's denial of a Rule 59 motion only if it abused its discretion. *Baker v. Dorfman*, 239 F.3d 415, 422 (2d Cir.2000). However, "where a district court denies a motion for a new trial made on the ground that the verdict was against the weight of the evidence, such a ruling is not reviewable on appeal." *Id.* (internal quotation marks omitted).

■ We Care first argues that Coach did not articulate a trade dress with sufficient specificity. We reject this argument because the court, in its charge to the jury, clearly indicated that the trade dress was limited to four elements in combination: glove tanned leather, bound edges, brass or nickel-plated brass hardware, and a lozenge shaped hang tag with a beaded chain. *Yurman Design, Inc., v. PAJ, Inc.,* 262 F.3d 101 (2d Cir.2001), on which We Care relies, held that a plaintiff must articulate

its trade dress because (1) jurors may conceive a vaguely described trade dress in terms of different features, resulting in a verdict based on inconsistent findings or they may be unable to evaluate secondary meaning, overbreadth, or non-functionality; (2) in the absence of a precise description, the court may craft an injunction that is too broad; and (3) the vagueness of the description may indicate that the proponent "seeks protection for an unprotectible style, theme, or idea" 262 F.3d at 117. The court's charge, based on Coach's description was sufficiently specific to require the jurors to focus on a common set of features and to allow them to evaluate secondary meaning, overbreadth, and functionality. Moreover, the description of the combination of elements does not describe "a style, theme, or idea."

■ We Care next contends that Coach failed to satisfy its burden, of showing that its trade dress is not functional. *See* 15 U.S.C. § 1125(a)(3). "[A] product feature is functional, and cannot serve as a trademark, if it is *essential* to the use or purpose of the article or if it affects the cost or quality of the article." *Traffix Devices, Inc. v. Marketing Displays, Inc.*, 532 U.S. 23, 32, 121 S.Ct. 1255, 149 L.Ed.2d 164 (2001) (internal quotation marks omitted; emphasis added). Even if individual elements of a trade dress are functional, their arrangement or combination may be "arbitrary, fanciful, or suggestive" and thus deserve trade dress protection. *Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*, 58 F.3d 27, 32 (2d Cir.1995). Coach offered proof that the combination of elements it claims as its trade dress is not essential to the use or purpose of handbags. Thus, the jury reasonably could have concluded that Coach's trade dress was not functional. We Care also argues the court erroneously prevented We Care from demonstrating the functionality of Coach's trade dress by

not allowing evidence that Coach made several trademark applications that were initially rejected and that Coach ultimately abandoned. Because these applications were for general handbag design rather than for the combination of features claimed in this lawsuit, they were not relevant and the court correctly refused to admit them.

■ We Care also attacks the sufficiency of Coach's proof on secondary meaning. In order to establish secondary meaning, a trade dress proponent must show that "in the minds of the public, the primary significance of [the trade dress] is to identify the source of the product rather than the product itself." *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 851 n. 11, 102 S.Ct. 2182, 72 L.Ed.2d 606. Indicators of secondary meaning include advertising expenditures used to link a product with its mark; consumer studies or direct testimony from consumers linking the mark to the source; sales success; unsolicited media coverage; attempts to plagiarize; and length and exclusivity of use of the mark. *Centaur Communications v. A/S/M Communications, Inc.*, 830 F.2d 1217, 1222–25 (2d Cir.1983). Coach offered survey results suggesting that consumers linked three of the four features in Coach's claimed trade dress with Coach. We Care contends that these survey results lack relevance and reliability because they are several years old; We Care's consumer base, women who pay less than fifty dollars for a handbag, was excluded; and the survey did not test for the hang tag. The court did not abuse its discretion by finding that the relevance of the survey results outweighed their prejudicial effect. Fed. R.Evid. 403. We Care was able to cross-examine Coach's expert extensively, obviating any potential prejudicial effect, and the survey results tended to establish a close identification in consumers' minds

between three out of four of the claimed features and Coach. The addition of the hang tag would only strengthen that association. Coach also offered proof of substantial advertising featuring its trade dress as well as evidence of a significant amount of copying.

We Care's contention that Coach failed to offer sufficient evidence for a finding of likelihood of confusion borders on the frivolous. Coach offered the jury significant evidence on the strength of its trade dress, the similarity of the two trade dresses, and the market proximity of the products. *See Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492, 495 (2d Cir.1961) (listing relevant factors).

■ We Care contends that the district court improperly permitted the addition of the contributory trade dress infringement claim on the eve of trial, thus depriving it of needed discovery. This contention has no merit. Under Federal Rule of Civil Procedure 15(b), the district court may consider, and indeed try claims outside of the pleadings so long as doing so does not cause prejudice. *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 569 (2d Cir.2000). We Care conducted discovery on Coach's trade dress infringement claim (which encompassed the same facts) and on the contributory trademark infringement claim. Both of these claims were alleged in the complaint. We Care now claims that it would have taken depositions of Coach's principals on the contributory trademark infringement claim "and moved from there." This vague contention is insufficient to establish prejudice.

Although We Care did not object to the submission of the contributory trade dress infringement claim to the jury, it argues that it was impossible for the jury to find trade dress infringement and contributory trade dress infringement on the same facts. We Care waived this objection by its failure to object before the jury retired unless the error is fundamental. Fed. R.Civ.P. 51; *Jarvis v. Ford Motor Co.*, 283 F.3d 33, 54 (2d Cir.2002). "Fundamental error is more egregious than the 'plain' error that can excuse a procedural default in a criminal trial and is so serious and flagrant that it goes to the very integrity of the trial." *Id.* at 61 (internal quotation marks and citations omitted). We find no fundamental error here.

■ We Care also attacks the jury's dilution verdict, claiming that Coach did not show its trademark (the hang tag) was famous or distinctive and that there was insufficient similarity between the two marks to cause blurring or dilution. We have already determined that Coach's hang tag "ha[s] become distinctive and valuable through Coach's promotional efforts and by virtue of its upscale reputation" and that the hang tag's "inherently distinctive shape and composition ... leads us to conclude that the mark is a fanciful one." *Coach Leatherware Co. v. AnnTaylor, Inc.*, 933 F.2d 162, 170 (2d Cir.1991). Thus the jury's determination that the hang tag was famous and distinctive was not unreasonable. We also determined in *AnnTaylor*, that the leather tag there was confusingly similar to Coach's despite the manufacturer's addition of a cardboard tag with its own name and its embossing of the leather tag with the retailer's name. *Id.* n. 1. Although a finding of confusing similarity does not compel a finding of dilution, we believe that the substantial similarity of the two marks here coupled with the use of Coach's very distinctive hang tag shape amply justified the jury's verdict.

■ "In a suit under the Lanham Act, attorney fees should be awarded only in exceptional cases and only on evidence of fraud or bad faith." *Gordon and Breach*

*Science Publ. S.A. v. Amer. Inst. of Physics,* 166 F.3d 438, 439 (2d Cir.1999) (internal citations and quotation marks omitted). We Care contends that this standard was not met because (1) the jury in its advisory verdict found no bad faith; (2) the case was close and Coach did not prevail on all its claims; and (3) the jury did not award damages. Because 15 U.S.C. § 1117(a) explicitly commits to the court the determination of attorney's fees, the court did not err in requesting only an advisory verdict from the jury. The court then was free to accept or reject the verdict. *Ragin v. Harry Macklowe Real Estate Co.,* 6 F.3d 898, 907 (2d Cir.1993). Moreover, the court's finding of bad faith was not clearly erroneous; there was ample proof of We Care's bad faith both pre-trial and during the trial. Finally, We Care cites no precedent establishing that either an award of damages or complete success is necessary for an award of attorney's fees. Coach's success in obtaining an injunction and the district court's well supported findings of bad faith on We Care's part, including a finding that two We Care principals perjured themselves, sufficiently support a finding of exceptional circumstances and an award of attorney's fees.

We may reverse the district court's grant of a permanent injunction only "for abuse of discretion, which may be found where the Court, in issuing the injunction, relied on clearly erroneous findings of fact or an error of law." *S.C. Johnson & Son. Inc. v. Clorox Co.,* 241 F.3d 232, 237 (2d Cir.2001). "Injunctive relief should be narrowly tailored to fit specific legal violations" and "an injunction should not impose unnecessary burdens on lawful activity." *Waldman Publ'g Corp. v. Landoll, Inc.,* 43 F.3d 775, 785 (2d Cir.1994). We Care contends that the injunction is overly broad because it prevents We Care from selling any handbag that employs a combination of glove-tanned leather (or simulat-ed glove-tanned leather) and bound edges. We agree. The district court justified enjoining the use of a combination of glove-tanned leather and bound edges without either the distinctive Coach hardware or its tag because "some Coach styles use little hardware, so that feature may not be important to a particular knock-off [and] the hang tag is easily removed." Because we find little or no proof in the record that glove-tanned leather and bound edges without either of the other two features would cause a likelihood of confusion between We Care's handbags and Coach's trade dress, we vacate paragraph (b)(i) of the permanent injunction and otherwise affirm the district court's exercise of discretion.