Mary **BRABSON,** Plaintiff–Appellee,

v.

**THE FRIENDSHIP HOUSE OF WESTERN NEW YORK,** Defendant–Appellant,

and

**Muhammad Furquan, Defendant.**

Docket No. 97–7959.

United States Court of Appeals, Second Circuit.

Sept. 6, 2002.

Sheila G. Graziano, Buffalo, NY, for Plaintiff–Appellee.

Kevin J. Bauer, Albany, NY, for Defendant–Appellant.

Present MESKILL, STRAUB and KATZMANN, Circuit Judges.

### SUMMARY ORDER

AFTER ARGUMENT AND UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the judgment of the District Court is hereby **AFFIRMED.**

Defendant–Appellant The Friendship House of Western New York ("Friendship House") appeals from a civil judgment entered against it on February 14, 1997, in the United States District Court for the Western District of New York (John T. Elfvin, *Judge* ), and appeals also from an order entered July 1, 1997, denying Friendship House's post-verdict motions for judgment as a matter of law and for a new trial. For the reasons stated below, we affirm.

### I.

Plaintiff–Appellee Mary Brabson was employed as a licensed practical nurse by Friendship House from October 1992 until

her involuntary termination two years later. Friendship House is a community service organization, partially funded by the state and federal governments, that contracts with the Erie County Department of Social Services to certify and supervise foster-care programs.

In November 1994, Brabson sued Friendship House and a former co-worker, Muhammad Furquan,[1] alleging sexual harassment, hostile work environment, and retaliation in violation of Title VII, 42 U.S.C. §§ 2000e et seq. Brabson additionally asserted claims under 42 U.S.C. § 1983 for the deprivation of her federal constitutional rights, and under state law for the intentional infliction of emotional distress.

Briefly, the essential factual charge was that while Brabson was employed at Friendship House, Furquan on several occasions directed sexually offensive statements, gestures and physical overtures at Brabson, yelled profanities at her and boasted to her about his prior violent criminal history that included incidents of rape, sodomy and assault—and that Friendship House, through its inaction in the face of Brabson's repeated complaints, ratified and accepted Furquan's conduct, and ultimately retaliated against Brabson by terminating her employment after she made reports to the Equal Employment Opportunity Commission ("EEOC").

Following a seven-day jury trial that concluded on February 5, 1997, the jury found in favor of Brabson on all claims and assessed damages against Friendship House as follows: compensation for "financial or economic harm or damages for last and future income," $46,634.75; damages for "infliction of emotional distress,"

$31,875.00; and punitive damages, $275,000.00.

On June 30, 1997, the District Court denied Friendship House's motions for judgment as a matter of law and for a new trial pursuant to Rules 50(b) and 59(a)(1) of the Federal Rules of Civil Procedure, respectively. *Brabson v. The Friendship House of W. N.Y., Inc.,* No. 94–CV–0834E(F), 1997 WL 411915 (W.D.N.Y. June 30, 1997). Friendship House timely appealed the judgment against it and the denial of its post-verdict motions to this Court in 1997, but we permitted the appeal to be withdrawn without prejudice pending resolution of Friendship House's bankruptcy proceedings. *Brabson v. Furqan,* Nos. 97–7951, 97–7959 (2d Cir. Jan. 14, 1998) (unpublished order). Those proceedings having concluded, the instant appeal was reinstated and we are now presented with the following three issues for review: (1) whether the District Court erred in refusing to grant Friendship House's motions for judgment as a matter of law and for a new trial as there was insufficient evidence for the jury to impute Furquan's harassment of Brabson to Friendship House; (2) whether the District Court erred in refusing to grant Friendship House's motions for judgment as a matter of law and for a new trial because Brabson insufficiently established that her termination was retaliatory; and (3) whether Brabson was entitled to an award for punitive damages and, even if so, whether such award was excessive.

## II.

■ We need not linger on Friendship House's appeal of the denial of its motion for a new trial pursuant to Fed.R.Civ.P. 59(a)(1). "[W]here a district court denies

---

**1.** A default judgment in this action was entered against Furquan on September 18, 1996. He is not part of this appeal.

a motion for a new trial made on the ground that the verdict was against the weight of the evidence, such a ruling is not reviewable on appeal." *Baker v. Dorfman,* 239 F.3d 415, 422 (2d Cir.2000) (internal quotation marks and citation omitted). Inasmuch as the basis for Friendship House's motion for a new trial was that the verdict was against the weight of the evidence, this aspect of Friendship House's appeal is foreclosed.

## III.

As for the District Court's denial of Friendship House's motion for judgment as a matter of law pursuant to Fed. R.Civ.P. 50(b), we review that denial *de novo* and apply the same legal standard used by the District Court below. *Phillips v. Bowen,* 278 F.3d 103, 108 (2d Cir. 2002). Judgment as a matter of law will only be granted where, even after viewing the evidence in the light most favorable to the non-moving party, there is "such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture," or where the evidence in favor of the movant is so overwhelming that "reasonable and fair minded men could not arrive at a verdict against him." *Id.* (internal quotation marks and citation omitted). In reconsidering a motion for judgment as a matter of law, we do not evaluate the credibility of witnesses or the weight of evidence. *Id.*

### A. Hostile Work Environment Claim

■ Friendship House does not challenge the jury's finding that Furquan sexually harassed Brabson. Instead, Friendship House argues that there is absolutely no basis in evidence for imputing Furquan's conduct to Friendship House. Appellant's Br. at 14. We disagree.

In order to demonstrate a specific basis for imputing Furquan's discriminatory conduct to Friendship House, Brabson must have shown that Friendship House "either provided no reasonable avenue for complaint or knew of the harassment but did nothing about it." *Briones v. Runyon,* 101 F.3d 287, 292 (2d Cir.1996) (internal quotations and citation omitted). Here, the evidence adduced clearly proved that Friendship House failed to provide a reasonable avenue for complaint. Friendship House had no sexual harassment policy at the time of the incidents. *Brabson,* 1997 WL 411915, at *1. Brabson testified as to her belief that complaints to Friendship House management would be futile given management's past inaction in response to Brabson's complaints and given the apparent close relationship between Furquan and at least one of Brabson's superiors. Tr. 153, 157, 929. As a result, Brabson reported her allegations directly to the EEOC. *Brabson,* 1997 WL 411915, at *1. Other Friendship House employees described feeling intimidated when discussing sexual harassment issues with the President and CEO of Friendship House because "[he] and other male employees had spoken of female employees in a sexually explicit and derogatory fashion." *Id.*

In respect of Friendship House having knowledge of the harassment but failing to act to remedy it, the evidence showed that Brabson informed her supervisors of Furquan's frequent misconduct. *Id.* Friendship House also received notice of Brabson's claim directly from the EEOC in September 1993. *Id.* At trial, however, Friendship House simply failed to show that Furquan was adequately reprimanded or that any reasonable steps were taken to prevent future conduct. *See Murray v. N.Y. Univ. Coll. of Dentistry,* 57 F.3d 243, 249 (2d Cir.1995) ("An employer who has notice of a discriminatorily abusive environment in the workplace has a duty to

take reasonable steps to eliminate it."). And while Brabson's desk was moved to an isolated office space after her initial complaint, once Brabson filed charges with the EEOC "Brabson was moved again to an office even closer to Furquan's" and "he continued to physically bump into or rub up against her in the hallways." *Brabson,* 1997 WL 411915, at *1.

Given the above, we find no fault with the District Court's determination that the "evidence overwhelmingly supports a conclusion that Brabson repeatedly endured Furquan's coarse, hostile, and boorish sexual harassment and intimidation, that Friendship House failed to provide a reasonable avenue for handling and resolving employee complaints of sexual harassment, that Friendship House knew of such complaints but failed to take adequate remedial measures, [and] that Brabson's work environment at Friendship House resultantly was permeated with sexual harassment and intimidation and was pervasively hostile." *Id.* at *2.

### B. Retaliation Claim

■ Friendship House contends that Brabson failed to establish a claim for discriminatory retaliation. To do so, Brabson must have shown (1) that Friendship House "took adverse action against [her] after becoming aware of her protected conduct, and (2) that a causal connection existed between the plaintiff's protected activity and the adverse action taken by the employer." *Murray,* 57 F.3d at 251 (internal quotation marks and citation omitted). The burden then shifts to the employer to articulate a "legitimate, nondiscriminatory reason" for its actions. *Kotcher v. Rosa & Sullivan Appliance Ctr., Inc.,* 957 F.2d 59, 64 (2d Cir.1992) (internal quotation marks and citation omitted).

Here, the jury was presented with ample evidence to support the conclusion that "Friendship House retaliated against Brabson and ultimately terminated her for complaining of such." *Brabson,* 1997 WL 411915, at *2. After Brabson notified Friendship House management of Furquan's harassment and filed a complaint with the EEOC, Friendship House unsuccessfully attempted to have a male employee endorse a memo falsely accusing Brabson of sexual harassment. *Id.* at *1. Brabson also became the subject of complaints of insubordination and poor work evaluations by management. *Id.* Finally, Brabson was denied use of her accrued vacation time and ultimately terminated after protesting this denial in October 1994. *Id.* The lower court characterized Brabson's termination as "pretextual" in light of the evidence. *Id.* at *2. We see no reason to disturb the District Court's conclusion.

### IV.

■ To be clear, Friendship House does not suggest that punitive damages are not available for violations of Title VII, Section 1983, and for the intentional infliction of emotional distress. Nor does Friendship House appeal the District Court's instruction to the jury that punitive damages could be awarded if they unanimously found by a "fair preponderance of the evidence" that Friendship House's "act or omission ... was maliciously or wantonly or oppressively done." Tr. at 1267. Instead, Friendship House simply argues that the punitive damages award "lacked a basis in the proof." Appellant's Br. at 19. But in light of evidence that Friendship House attempted to have an employee concoct a false accusation of sexual harassment against Brabson, and given the finding that Brabson's termination was pretextual, we agree with the District Court that "the conduct of Friendship House was outrageous and shocking and in reckless dis-

**19**

regard of Brabson's rights," and that "the evidence supports a finding that the conduct of Friendship House was wanton and oppressive warranting exemplary damages." *Brabson,* 1997 WL 411915, at *2.

As for Friendship House's argument in the alternative that the punitive damages award would result in its "financial ruin" and thus should be reduced by this Court, we find that the issue has not been properly raised. The contention was, as far as the record reveals, never asserted below. Nor does Friendship House provide in its brief anything other than the single conclusory statement that the award would have the "effect" of resulting in its "financial ruin." Appellant's Br. at 19. Indeed, what the record does reveal is that Friendship House's petition for bankruptcy was dismissed. *Brabson v. The Friendship House of W. N.Y., Inc.,* No. 94–CV–0834E, 2000 WL 1335745, *1 (W.D.N.Y. Sept.6, 2000). The matter having not been litigated before the District Court, and there being no facts in the record to support a finding of "financial ruin," we deny Friendship House's request for remittitur. *See Singleton v. Wulff,* 428 U.S. 106, 120–21, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976) ("It is the general rule, of course, that a federal appellate court does not consider an issue not passed upon below.... The matter of what questions may be taken up and resolved for the first time on appeal is one left primarily to the discretion of the courts of appeals, to be exercised on the facts of individual cases.").

### V.

For all the reasons set forth above, the judgment and order of the District Court are hereby **AFFIRMED.**