**OFFICIAL COMMITTEE OF THE UNSECURED CREDITORS OF COLOR TILE, INC., as assignee of the claims of the Chapter 11 estates of Color Tile, Inc. and Color Tile Holdings, Inc. Plaintiff–Appellant,**

v.

**COOPERS & LYBRAND, LLP, Defendant–Appellee,**

**Investcorp, S.A., ABF Acquisition Corp., Investcorp Bank, E.C., Investcorp Holdings Limited, Jon W. Hedley, Charles J. Philippin, E. Garrett Bewkes, III, Walter F. Loeb, Window Investments Limited, Shades International Limited, Shades Investments Limited, Blind Equity Limited, Blinds Holdings Limited, AIBC Investcorp Finance B.V., Investcorp Investment Holdings Limited, Acquisition Capital Limited, Corporate Capital Limited, Funding Capital Limited and Planning Capital Limited, Defendants,**

**Investcorp International, Inc., CIP Limited, Corporate Equity Limited, Acquisition Equity Limited, Funding Equity Limited, Planning Equity Limited, Elias N. Hallack, Nemir A. Kirdar, Michael L. Merritt, Paul W. Soldatos, Defendants–Third–Party–Plaintiffs–Counter–Defendants,**

**Eddie M. Lesok, Third–Party–Defendant–Counter–Claimant,**

N. Laurence Nagle, Third–
Party–Defendant.

Docket No. 01–9432.

United States Court of Appeals,
Second Circuit.

Argued: Sept. 30, 2002.

Decided: Feb. 20, 2003.

Peter M. Fishbein, Kaye Scholer LLP, New York, NY (Jane W. Parver, Michael

A. Lynn, Efrem Schwalb, on the brief), for Plaintiff–Appellant.

William R. Maguire, Hughes Hubbard & Reed LLP, New York, NY (Vilia B. Hayes, on the brief), for Defendant–Appellee.

Before: MINER, SOTOMAYOR, and KATZMANN, Circuit Judges.

MINER, Circuit Judge.

The action giving rise to this appeal was commenced in the United States District Court for the Southern District of New York (Cedarbaum, *J.*) by plaintiff-appellant Official Committee of the Unsecured Creditors of Color Tile, Inc. ("Color Tile Committee"), as assignee of the bankruptcy estate of Color Tile, Inc., against defendant-appellee Coopers & Lybrand, LLP ("Coopers"), an accounting firm that provided auditing and consulting services for Color Tile and its controlling shareholders. The services were provided in connection with a merger and acquisition transaction (the "Transaction") and a public debt offering that was used to finance the Transaction. The gravamen of the claims asserted against Coopers is that it breached the fiduciary duties it owed to Color Tile, as well as the terms and conditions of its consulting agreement with Color Tile, by failing to disclose to Color Tile's Board of Directors all material information pertaining to the Transaction. Color Tile Committee alleges that the Transaction would not have taken place had these disclosures been made. The District Court dismissed the claims for breach of fiduciary duty and breach of contract set forth in the Second Amended Complaint upon a finding that, under Texas law, the complaint failed to state claims upon which relief could be granted because the facts pled therein demonstrated as a matter of law the affirmative defense of in pari delicto. The District Court subsequently denied a motion filed by Color Tile Committee to re-

consider the dismissal of the Second Amended Complaint in light of the District Court's decision to grant partial summary judgment in favor of certain other defendants and for leave to file a Third Amended Complaint.

On appeal, Color Tile Committee principally argues that the District Court erred in dismissing its Second Amended Complaint on the pleadings because the defense of in pari delicto had not been established as a matter of law. For the reasons that follow, we affirm the judgment of the District Court, although we decline to embrace the entirety of the District Court's analysis of Texas law with respect to the in pari delicto defense.

## BACKGROUND

The facts forming the basis for this litigation are set forth in two comprehensive published opinions written by the District Court, *see Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Investcorp S.A.,* 80 F.Supp.2d 129 (S.D.N.Y.1999) (*"Color Tile I "*); *Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Investcorp, S.A.,* 137 F.Supp.2d 502 (S.D.N.Y.2001) (*"Color Tile II "*), familiarity with which is assumed. We therefore summarize below only those facts and proceedings relevant to the present appeal.

I. *Events Leading Up to the District Court Proceedings*

Before it ceased operations, Color Tile was a Delaware corporation, headquartered in Fort Worth, Texas, that was a large specialty retailer of floor covering products. Since approximately 1989, Color Tile was a portfolio company of the "Investcorp Group," an affiliation of investment entities engaged in the business of acquiring control of companies by investing its own funds as well as the funds of its

wealthy foreign investors. The Investcorp Group was a long-standing client of Coopers, which had performed the due diligence on Color Tile before Color Tile was acquired by the Investcorp Group and which had been retained as Color Tile's outside auditor after the Investcorp Group acquired Color Tile.

In 1993, the Investcorp Group attempted to make Color Tile a more attractive candidate for an initial public offering by arranging for Color Tile to acquire the assets of American Blind Factory ("ABF"), a privately-owned, family-run company headquartered in Michigan that sold blinds and wallpaper through direct response marketing and retail stores. Through a series of complicated M & A transactions, Color Tile (through a wholly-owned subsidiary) eventually acquired ABF's assets and certain of its liabilities in late 1993/early 1994. The total cost of the Transaction to Color Tile was approximately $104 million. To finance the Transaction, the Investcorp Group arranged for Color Tile to raise $200 million in a public high-interest bond offering. The proceeds from this offering were used to pay the purchase price and transaction costs of the Transaction and to retire certain preexisting Color Tile bank debt that its lenders required Color Tile to pay down before they would consent to the Transaction.[1]

Coopers performed certain consulting services for Color Tile in connection with the Transaction and the high-interest bond offering, the most significant of which were reviewing ABF's financial condition, performing due diligence on ABF, and analyzing how Color Tile would financially perform after acquiring ABF's assets.

Color Tile Committee alleges that, as a result of these activities, Coopers learned that the financial projections used by the Investcorp Group to substantiate the Transaction were unrealistic and that, because these financial projections bore no resemblance to the actual performance of the two companies, there was a significant risk that Color Tile would be unable to meet its financial obligations as they came due and to operate its business in a competitive fashion after the Transaction closed. (This alleged knowledge on the part of Coopers is referred to as the "Negative Conclusions" in the various complaints subsequently filed by Color Tile Committee.) Coopers allegedly failed to share these Negative Conclusions with the five-member Color Tile Board of Directors, three of whom were members of Color Tile's management ("Management Directors") and two of whom were affiliated with the Investcorp Group ("Investcorp Group Directors").

The Investcorp Group's optimistic financial projections about the Color Tile–ABF combined operations never came to pass, and Color Tile began to experience difficulties servicing its new debt. In or about December 1995, Color Tile defaulted on a $10.4 million interest payment due on its high-interest bonds, and the following month it filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code. In September of 1997, a global settlement was reached between Color Tile's bankruptcy estate and its various creditors, pursuant to which an assignment was made to Color Tile Committee[2]

1. As is the case with many bank loans, Color Tile's bank loans contained covenants requiring Color Tile to obtain the prior consent of its lenders before incurring the additional indebtedness contemplated by the Transaction and the high-interest bond offering.

2. Color Tile Committee is made up of Color Tile's twenty largest unsecured creditors, the largest of which are the note holders of the high-interest bond debt.

authorizing it to prosecute certain claims on behalf of the bankruptcy estate.

## II. *District Court Proceedings*

In December 1997, Color Tile Committee filed a complaint in the District Court against various Investcorp Group affiliates ("Investcorp Group Defendants"), the Investcorp Group Directors, and Coopers. The complaint was amended once in March 1998 ("First Amended Complaint") and once again in August 1998 ("Second Amended Complaint") after the District Court had granted from the bench Coopers' motion to dismiss on the ground that, under New York law, the facts pled in the First Amended Complaint demonstrated as a matter of law the affirmative defense of in pari delicto.

Color Tile Committee alleged several causes of action against Coopers in its Second Amended Complaint, only two of which are relevant to this appeal. First, Color Tile Committee alleged that Coopers breached the fiduciary duties it owed to Color Tile by not informing Color Tile's Board of Directors of the Negative Conclusions, and in particular, that: (1) the Transaction "was being forced on Color Tile by the Investcorp Group for the interests of the Investcorp Group and was detrimental to the interests of Color Tile"; and (2) the Transaction "created a grave risk that Color Tile would be unable to meet its obligations as they became due and operate its business competitively." Color Tile Committee further alleged that Coopers' breach of its fiduciary duties to Color Tile "proximately caused damage to Color Tile," because "absent the breach, Color Tile would not have consummated the Transaction." In particular, Color Tile Committee alleged that, if Coopers had informed Color Tile's Board of Coopers' Negative Conclusions, the Management Directors would have informed the underwriter of the high-interest bond offering and the lenders whose consents were required to close the Transaction of the Negative Conclusions. Allegedly, those entities would not have permitted the Transaction to close had they been so informed. Second, Color Tile Committee alleged that Coopers breached its consulting contract with Color Tile to perform the due diligence for the Transaction either by not discovering the Negative Conclusions or by discovering them and not reporting them to the Board.[3]

Color Tile Committee also alleged several causes of action against the Investcorp Group Defendants and the Investcorp Group Directors, only one of which is relevant to this appeal. According to Color Tile Committee, the Investcorp Group Defendants breached the duties of loyalty that they owed to Color Tile as controlling shareholders by "forcing" Color Tile to purchase the ABF assets on unreasonable terms (e.g., by paying a purchase price that was allegedly more than twice the fair market value of the assets and by incurring additional bond debt that bore a much higher rate of interest than the bank debt it was retiring as a condition to closing the Transaction) that were were dictated by them. The Investcorp Defendants were allegedly motivated to breach their duties of loyalty both by their desire to cash out their shares at a premium in a potential future Color Tile initial public offering and the approximately $4 million in fees they received in connection with the Transaction. In particular, Color Tile Committee

---

3. The remaining claims against Coopers that were eventually dismissed by the District Court but not pursued on appeal were that Coopers aided and abetted the Investcorp Group Defendants' breaches of their fiduciary duties and that Coopers negligently certified Color Tile's 1993 and 1994 audited financial statements.

alleged that the Investcorp Group Defendants "dictated the terms and price that Color Tile paid for the ABF Assets," and responded to the objections made by the Management Directors by "freezing [them] out of the Transaction and by handling all of the arrangements themselves" and not "permitting Color Tile to seek advice from independent advisors, experts or other sources as to whether the [T]ransaction was fair to Color Tile."

About one month after the parties briefed Coopers' motion to dismiss the Second Amended Complaint for failing to state claims upon which relief could be granted, the District Court, apparently sua sponte, ordered supplemental briefing on whether the claims now on appeal were governed by New York or Texas law. Following this supplemental briefing, in November 1999, the District Court granted Coopers' motion to dismiss the Second Amended Complaint, pursuant to Fed. R.Civ.P. 12(b)(6), on the ground that the facts alleged in the complaint failed to state claims upon which relief could be granted. After concluding that Texas law governed the claims asserted against Coopers, the District Court found that Color Tile Committee had standing to sue Coopers on behalf of Color Tile, even though Color Tile's Board had unanimously voted in favor of approving the ABF deal. *See Color Tile I*, 80 F.Supp.2d at 137. But, the court concluded, the only Texas case on point "suggested that if collaboration" by Color Tile's Management with Coopers "were established on the face" of the Second Amended Complaint, "dismissal of the complaint for pleading the ... affirmative defense" of in pari delicto "would be appropriate." *Id.*

According to the District Court, the affirmative defense of in pari delicto is "limited to situations where the plaintiff bore at least substantially equal responsibility for his injury." *Id.* at 138. Relying on Color Tile Committee's allegations in the Second Amended Complaint that the Color Tile Board "approved the [Transaction] knowing that it was based on grossly inflated and exaggerated projections of revenue growth," and that the Investcorp Group (acting as Color Tile's "sole shareholder") "forced" the ABF deal "on Color Tile against warnings from Color Tile's Management," the District Court found that Color Tile, through its Board and sole shareholder, bore "at least substantially equal responsibility with Coopers for permitting [the Transaction] to go forward on the basis of inflated projections." *Id.* Accordingly, "[b]ecause all the facts that give rise to" an in pari delicto affirmative defense were "alleged in the [Second Amended] Complaint," the District Court found it was "proper to dismiss" both the breach of fiduciary duty and breach of contract claims "under [Rule] 12(b)(6)." *Id.*

About eighteen months after dismissing Color Tile Committee's claims against Coopers, the District Court entered summary judgment in favor of the Investcorp Group Defendants and the Investcorp Group Directors on several of the claims alleged in the Second Amended Complaint, including the claim that, as controlling shareholders, the Investcorp Group Defendants breached the duties of loyalty that they owed to Color Tile by forcing the company to close the Transaction. *See Color Tile II*, 137 F.Supp.2d 502. The District Court offered three reasons to support its conclusion that, as a matter of law, the Investcorp Group Defendants did not breach their duties of loyalty to Color Tile, the third of which was that "[a]ll the evidence demonstrates that the interests of the shareholder defendants were aligned with, and not in conflict with, the interests of all the other shareholders." *Id.* at 509. In particular, in response to Color Tile Committee's claim that the Management Directors

had approved the deal "because they feared that if they opposed it, they would be replaced by" the Investcorp Group Defendants, the District Court found that "[t]he only evidence in the record on this point directly refutes plaintiff's speculation." *Id.* at 510. Indeed, all of the Management Directors testified during their depositions that their "decision to approve the [Transaction] was not influenced by the fear of losing [their] job[s]." *Id.*

In October 2001, the remaining claims against the Investcorp Group Defendants were dismissed as part of a $30 million settlement. Two weeks later, Color Tile Committee moved, pursuant to Fed. R.Civ.P. 54(b), to revise the District Court's November 1999 Order dismissing the claims against Coopers, to reinstate the breach of fiduciary duty and breach of contract claims against Coopers, and for leave to amend the Second Amended Complaint to conform it to the evidence in accordance with the District Court's summary judgment decision in *Color Tile II.* On November 8, the District Court entered final judgment dismissing with prejudice the claims against Coopers, and on December 10, it denied Color Tile Committee's Rule 54(b) motion, characterizing it as "an untimely motion to amend the pleading because of the lack of evidence." On the same day, Color Tile Committee filed a timely notice of appeal.

### DISCUSSION

I. *Does Color Tile Committee Have Standing to Bring These Claims?*

■ The District Court dismissed the claims against Coopers, even though it found that Color Tile Committee had standing to bring those claims. On appeal, Coopers argues that the District Court's decision can be affirmed on the alternative ground that the District Court misinterpreted Texas law and should have held that Color Tile Committee lacked standing to bring those claims. Indeed, "[b]ecause standing is jurisdictional under Article III ..., it is a threshold issue in all cases since putative plaintiffs lacking standing are not entitled to have their claims litigated in federal court." *Shearson Lehman Hutton, Inc. v. Wagoner,* 944 F.2d 114, 117 (2d Cir.1991). We therefore first address the issue of standing.

■ As assignee of the Color Tile bankruptcy estate, Color Tile Committee "stands in the shoes of [Color Tile] and has standing to bring any suit that [Color Tile] could have instituted had it not petitioned for bankruptcy." *Id.* at 118 (citing 11 U.S.C. §§ 541, 542). Conversely, Color Tile Committee cannot sue for claims that could have been brought by Color Tile's creditors. *Id.* Furthermore, "state law determines whether a right to sue belongs to [Color Tile] or to the individual creditors." *In re Mediators, Inc.,* 105 F.3d 822, 825 (2d Cir.1997); *see also In re Educators Group Health Trust,* 25 F.3d 1281, 1284 (5th Cir.1994) (*"Educators"*).

■ The District Court concluded that Texas law should be applied to determine whether Color Tile Committee's claims against Coopers for breach of fiduciary duty and breach of contract belong to Color Tile or to its creditors, *see Color Tile I,* 80 F.Supp.2d at 135, and the parties do not contest that conclusion in this appeal. In *Educators,* the Fifth Circuit, interpreting Texas law,[4] held that the trustee of a bankrupt health insurance trust—rather

---

4. The Fifth Circuit's decision interpreting Texas law is binding on this Court, which "conclusively defer[s] to a federal court of appeals's interpretation of the law of a state that is within its circuit." *Booking v. Gen. Star Mgmt. Co.,* 254 F.3d 414, 421 (2d Cir. 2001).

than the bankrupt trust's creditors—had standing to pursue state court actions in which it was alleged that the defendants (third-party administrators of the trust) breached their contract with the trust and breached their fiduciary duties to the trust. 25 F.3d at 1285–86. One of the arguments rejected by the Fifth Circuit was that "the causes of action listed in the complaint are not the property of the estate because the debtor's representatives participated in the acts or omissions giving rise to the causes of actions." *Id.* at 1286. "Implicit in this argument," the court opined, was "the notion that a debtor cannot raise a cause of action for which the defendant may have a valid defense on the merits." *Id.* In rejecting that notion, the Fifth Circuit found no "support for the proposition that a defense on the merits of a claim brought by the debtor precludes the debtor from *bringing* the claim." *Id.* According to the court, "[t]hat the defendant may have a valid defense on the merits of a claim brought by the debtor goes to the resolution of the claim, and not to the ability of the debtor to assert the claim." *Id.*

The parties agree that the unspecified "valid defense" referenced by the court in *Educators* is the in pari delicto defense. In a somewhat cryptic footnote, however, the Fifth Circuit stated that it could not "conclude from the allegations in the complaint whether representatives of [the bankrupt trust] actually participated in the acts or omissions giving rise to the causes of action," and for that reason the court found "misplaced the . . . reliance on [the

Second Circuit's decision in *Wagoner*]" because, in *Wagoner*, it was "'uncontested' that the management of the debtor corporation cooperated with the third-party defendant in stripping the corporation of its assets." *Id.* n. 7 (quoting *Wagoner*, 944 F.2d at 120).

Here, the District Court relied on *Educators* in concluding that Color Tile Committee had standing to sue Coopers for breach of fiduciary duty and breach of contract. *See Color Tile I*, 80 F.Supp.2d at 137. The parties agree that *Educators* is the only case interpreting Texas law with respect to whether Color Tile Committee has standing to bring the claims it alleges against Coopers, but they disagree over whether Color Tile Committee has standing under this decision, given both Color Tile Committee's allegation that Color Tile's Board and controlling shareholders approved the Transaction and the contents of the footnote distinguishing our decision in *Wagoner*. Despite the footnote, the Fifth Circuit's decision plainly supports the District Court's conclusion that Color Tile Committee had standing to sue Coopers, regardless of the complicity of Color Tile in Coopers' alleged misconduct. The dicta in the footnote distinguishing *Wagoner* does not change this result, for it distinguishes a decision of this Court that did not purport to apply Texas law.[5] Accordingly, we find that, under Texas law, Color Tile Committee had standing to bring Color Tile's breach of fiduciary duty and breach of contract claims against Coopers.

---

5. Moreover, in its attempt to show that it was not being inconsistent with *Wagoner*, the Fifth Circuit appears to have inadvertently mischaracterized *Wagoner*, likely because of its shorthand treatment of the subject in a footnote. *Wagoner* had nothing to do with affirmative defenses. Rather, because the appeal in *Wagoner* arose in the context of whether a plaintiff's claims were arbitrable, this Court acknowledged that it did not have the authority to analyze the merits of those claims, as the Fifth Circuit did. *See* 944 F.2d at 119 (citing *AT & T Techs., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 649–50, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986)).

II. *Was the Affirmative Defense of In Pari Delicto Established As a Matter of Texas Law by the Facts Pled in the Second Amended Complaint?*

A complaint should not be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted " 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *Cooper v. Parsky,* 140 F.3d 433, 440 (2d Cir. 1998) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). A court's task "in ruling on a Rule 12(b)(6) motion 'is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.' " *Id.* (quoting *Ryder Energy Distribution Corp. v. Merrill Lynch Commodities Inc.,* 748 F.2d 774, 779 (2d Cir.1984)). Furthermore, a court must "accept as true all factual allegations in the complaint." *Id.* Finally, a complaint can be dismissed for failure to state a claim pursuant to a Rule 12(b)(6) motion raising an affirmative defense "if the defense appears on the face of the complaint." *Pani v. Empire Blue Cross Blue Shield,* 152 F.3d 67, 74 (2d Cir.1998) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* §§ 1277, 1357 (1990 & Supp. 1998)). We review de novo a dismissal for failure to state a claim. *Cooper,* 140 F.3d at 440.

The common-law defense of in pari delicto derives from the Latin "in pari delicto potior est conditio defendantis"; in other words, "where the wrong of the one party equals that of the other, the defendant is in the stronger position," and a court will not "administer a remedy." 34 *Tex. Jur.3d* "Equity" § 31 (2002). As one Texas court described the basis for this ancient rule:

[W]hile a court of equity will on swift wings fly to relieve the innocent from wrong and injury, it travels with leaded feet and turns a deaf ear, when called on to furnish a cloak of righteousness to cover sin, and, where both parties are equally guilty, neither can be said to come with clean hands, and the court will relieve neither, but leave the parties where they are found.

*Grant v. Grant,* 286 S.W. 647, 650 (Tex. Civ.App.1926). On appeal, Color Tile Committee argues that the District Court erred in dismissing both its breach of contract and breach of fiduciary duty claims at the pleading stage.

In dismissing the Second Amended Complaint on the ground that the affirmative defense of in pari delicto had been established as a matter of Texas law, the District Court did not make any distinctions between the applicability of that defense to Color Tile Committee's breach of contract claims and its breach of fiduciary duty claims. We analyze separately the applicability of this defense to each of these claims below.

A. *Breach of Contract Claims*

On appeal, Color Tile Committee argues that in pari delicto generally has been rejected by courts as applying to breach of contract claims, absent an allegation that the breached contract was unlawful. *See, e.g., In re Olympia Brewing Co. Sec. Litig.,* No. 77–C–1206, 1985 WL 3928, 1985 U.S. Dist. LEXIS 13,796 (N.D.Ill. Nov. 18, 1985). Moreover, Color Tile Committee argues that we should construe the absence of any reported Texas cases in which in pari delicto was raised as an affirmative defense to claims that a lawful contract was breached as evidence that Texas courts would not permit the defense to be raised in these circumstances.

Coopers urges that we affirm the dismissal of the breach of contract claims on two alternative grounds. First, Coopers argues that Color Tile Committee did not raise this argument in its opposition to Coopers' motion to dismiss the Second Amended Complaint and only raised it for the first time in a footnote to its legal memorandum in support of its Rule 54(b) motion. Consequently, Coopers argues that the argument has been waived and that we should not consider it. In the alternative, Coopers argues that Color Tile Committee's claims—regardless of how they are pled in the Second Amended Complaint—are really accounting malpractice claims, and thus should be subject to in pari delicto. Alternatively, Coopers argues that Texas does not permit accounting malpractice claims to be pled as breach of contract claims.

■■■■ Generally, we will not consider an argument on appeal that was raised for the first time below in a motion for reconsideration. *Nat'l Union Fire, Ins. Co. v. Stroh Cos.*, 265 F.3d 97, 115–16 (2d Cir. 2001). This "waiver" rule, is "one of prudence," however, and not jurisdictional. *Baker v. Dorfman*, 239 F.3d 415, 420 (2d Cir.2000) (internal quotation marks omitted). We retain "broad discretion" to consider issues not timely raised below. *Id.* (internal quotation marks omitted). In determining whether to consider such issues, we are more likely to exercise our discretion when either (1) "consideration of the issue is necessary to avoid manifest injustice" or (2) "the issue is purely legal and there is no need for additional factfinding." *Id.* (internal quotation marks omitted). While the latter exception might seem applicable here on its face, we decline to reach Color Tile Committee's contract claims arguments.

Our discretion to decide purely legal issues derives from the Supreme Court's pronouncement that "where the proper resolution is beyond any doubt," an appellate court may legitimately exercise its discretion to hear an issue not addressed below. *Singleton v. Wulff*, 428 U.S. 106, 120–21, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976) (stating that this discretion is "left primarily to the . . . courts of appeals" and is subject to "no general rule"); *see also J.C. v. Reg. Sch. Dist. 10 Bd. of Educ.*, 278 F.3d 119, 125 (2d Cir.2002) (describing the exception under which an appellate court will reach a purely legal question as a subset of the court's discretion outlined in *Singleton* to resolve issues where the proper outcome is "beyond any doubt"). Most pure issues of law are issues "where proper resolution is beyond any doubt."

■■■■ Here, of course, the proper resolution of the legal issues concerning the applicability of the in pari delicto defense to the claims styled by Color Tile Committee as breach of contract claims is far from "beyond any doubt." First, it is not beyond doubt whether the claims styled as "breach of contract claims" in the Second Amended Complaint are, indeed, breach of contract claims, as opposed to malpractice claims. For example, in *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085 (2d Cir.1995), we held that the breach of contract claims brought against an accounting firm relating to due diligence performed in connection with a corporate acquisition sounded only in malpractice and not in contract, notwithstanding how they were pled in the complaint.[6] The law in

---

6. Indeed, our decision in *Hirsch* and the particular procedural context in which the case at bar proceeded in the District Court may explain why Color Tile Committee did not raise this argument in the District Court sooner. The District Court did not request supplemental briefing on whether New York or Texas law applied until about one month after the

Texas is not so settled, however. Texas courts plainly disfavor breach of contract claims brought against accountants in connection with their performing traditional auditing services. *See, e.g., FDIC v. Ernst & Young,* 967 F.2d 166, 172 (5th Cir.1992); *Univ. Nat'l Bank v. Ernst & Whinney,* 773 S.W.2d 707, 710 (Tex.App.1989). There are no Texas cases on point, however, concerning whether this disfavored treatment extends to breach of contract claims (like those pled in the Second Amended Complaint) brought against accountants in connection with consulting services that fall outside their traditional tax and auditing services. Color Tile Committee directs our attention to dicta in *Southwestern Bell Telephone Co. v. DeLanney,* 809 S.W.2d 493, 494 n. 1 (Tex.1991), where the Texas Supreme Court labeled a suit filed against a yellow pages owner for failing to list the plaintiff's name as a breach of contract claim but opined that "some contracts involve special relationships that may give rise to duties enforceable [in] tort[ ]." But, to the extent that this question turns on the language of the consulting contract between Color Tile and Coopers, we face the additional obstacle that the contract

has not been furnished to us.[7] At bottom, the record lacks the information required to determine the precise nature of this contract, so deciding whether this contract in particular moves Coopers beyond the malpractice-only position articulated in *Sledge* and into the contract-based liability exception left open in *DeLanney* would require ill-advised guesswork on our part.

Second, were we to decide that these claims are really malpractice claims dressed up as breach of contract claims, it is not beyond doubt whether such claims are barred by the in pari delicto defense under Texas law. Color Tile Committee asserts that the defense is not available in negligence or malpractice cases, as the defense is not compatible with the Texas Proportionate Responsibility Act passed in 1978. *See* Tex. Civ. Prac. & Rem.Code Ann. §§ 33.001 et seq. (Vernon 2002). As discussed above, the District Court relied on the Fifth Circuit's decision in *Educators,* which held that in pari delicto is a valid Texas-law defense to claims for "breach of duty of care owed," *see* 25 F.3d at 1286, brought by a bankruptcy estate.[8] While the Fifth Circuit never mentioned

motion to dismiss the Second Amended Complaint had been briefed. Thus, it was not unreasonable for Color Tile Committee not to have raised this argument in opposing Coopers' motion to dismiss, as this argument would have been a dead letter in light of *Hirsch.* But there is no satisfactory explanation for Color Tile Committee's failure to make this argument when it briefed the choice-of-law issue, when it moved for reconsideration of the District Court's decision to dismiss the Second Amended Complaint, or during the two years that passed between the District Court's dismissal of the Second Amended Complaint and the filing of the Rule 54(b) motion.

7. While the joint appendix includes excerpts from deposition testimony describing the scope of the engagement, we cannot consider even this meager evidence, for our review is

limited to undisputed documents, such as a written contract attached to, or incorporated by reference in, the complaint. *See Cortec Indus., Inc. v. Sum Holding, L.P.,* 949 F.2d 42, 47 (2d Cir.1991).

8. *Educators* actually only held that "the debtor's representatives [who] participated in the acts or omissions giving rise to the causes of action" had standing to sue on behalf of the debtor, but implied that these circumstances constituted "a defense on the merits of a claim brought by the debtor." 25 F.3d at 1286. Had the Fifth Circuit squarely held that the in pari delicto defense was available, we would give absolute deference to its interpretation of a point of Texas law not yet reached by the Texas courts. *See Booking,* 254 F.3d at 421. But the degree of deference we should afford to the Fifth Circuit's dicta on Texas law is less clear.

the doctrine of in pari delicto, the District Court in the case at bar observed that "[t]he parties are in agreement that the affirmative defense to which the Fifth Circuit refer[red] ... [was] the equitable defense of *in pari delicto.*" *Color Tile I,* 80 F.Supp.2d at 137.[9] In any event, we have found no Texas cases sustaining an in pari delicto defense to malpractice claims—either before or after the enactment of the Texas Proportionate Responsibility Act.

Finally, were we to decide that these claims are breach of contract claims, it is not beyond doubt that the in pari delicto defense is available in contract claims where the contract is not alleged either to violate public policy or to be unlawful. This is yet another area of in pari delicto jurisprudence that remains uncharted in Texas.

Given all of these unanswered questions concerning issues of first impression under Texas law, the pure legal issue presented on appeal by Color Tile Committee in this diversity case—while perhaps worthy of certification if raised in another context—is by definition subject to contradictory interpretations and thus not "beyond any doubt." Accordingly, we decline to reach out, exercise our discretion, and address the merits of a belated argument where there has been no showing made of manifest injustice.

### B. *Breach of Fiduciary Duty Claims*

Presuming the applicability of some form of the in pari delicto defense to Color Tile Committee's breach of fiduciary duty claims, the District Court observed that Color Tile, through its Board and controlling shareholders, bore "at least substantially equal responsibility with Coopers for permitting [the Transaction] to go forward on the basis of inflated projections." *Color Tile I,* 80 F.Supp.2d at 138. This finding was in accord with the District Court's interpretation of Texas law that the in pari delicto defense applies in "situations where the plaintiff bore at least substantially equal responsibility for his injury." *Id.* The allegations in the Second Amended Complaint relied upon by the District Court in establishing that Color Tile bore substantially equal responsibility with Coopers were that Color Tile's Board "approved the [Transaction] knowing that it was based on grossly inflated and exaggerated projections of revenue growth," and that the Investcorp Group (acting as Color Tile's "sole shareholder") "forced" the Transaction "on Color Tile against warnings from Color Tile's Management." On appeal, Color Tile Committee argues that the District Court erred in finding, as a matter of law, that the in pari delicto defense applied to its breach of fiduciary duty claims, because the application of this defense is very fact intensive and thus adjudicating its merits on a Rule 12(b)(6) motion to dismiss was inappropriate.

1. *Was the District Court's Interpretation of Texas In Pari Delicto Doctrine Correct?*

As an initial matter, we are not as certain as the District Court and the parties that the interpretation of the in pari delicto doctrine applied here by the District Court is one that would be applied by the courts of Texas. There are no Texas cases opining on the applicability of the in pari delicto defense in a factual situation analogous to that alleged by Color Tile Committee. Rather, the cases decided in Texas arise where a party seeks to excuse its failure to perform on the ground that

---

9. Indeed, this agreement is a further indication that Color Tile Committee has waived its argument that in pari delicto does not apply to "breach of duty of care owed" claims under Texas law.

the transaction was unlawful. The Texas courts' response to this defense is that the party seeking to avoid performance may not be able to do so on this ground. *See, e.g., Lewis v. Davis,* 145 Tex. 468, 199 S.W.2d 146, 151 (Tex.1947); *Graham v. Dean,* 144 Tex. 61, 188 S.W.2d 372, 373 (1945); *Am. Nat'l Ins. Co. v. Tabor,* 111 Tex. 155, 230 S.W. 397, 399–400 (1921). The rule in Texas, even in the case of an unlawful transaction, is that courts must decide "whether the policy against assisting a wrongdoer outweighs the policy against permitting unjust enrichment of one party at the expense of the other," and this balancing of the equities often "depends upon the peculiar facts and the equities of the case, and the answer usually given is that which it is thought will better serve public policy." *Lewis,* 199 S.W.2d at 151.

Texas (and other) federal courts have applied a federal common-law in pari delicto defense that also uses this concept of not allowing wrongdoers to benefit at the expense of the public in adjudicating private rights of action arising under various federal regulatory statutes. For example, in *Banc One Capital Partners Corp. v. Kneipper,* 67 F.3d 1187, 1197 (5th Cir. 1995), a securities fraud action filed under federal and state securities laws, the court quoted language from the Supreme Court's decision in *Bateman Eichler, Hill Richards, Inc. v. Berner,* 472 U.S. 299, 310–11, 105 S.Ct. 2622, 86 L.Ed.2d 215 (1985), to the effect that parties are in pari delicto where "the plaintiff bears at least substantially equal responsibility for the violations he seeks to redress." [10] As another court explained, after opining that "tension" apparently existed "between the objectives of federal securities regulatory scheme and this common law equitable defense," the elements of the "regulatory" version of this defense in the Fifth Circuit are that "(1) the fault of the parties must be clearly mutual, simultaneous, and relatively equal; (2) the plaintiff must be an active, essential, and knowing participant in the illegal activity; and (3) the effect on the investing public or on the regulatory scheme, caused by permitting the defense, must be so slight that it does not interfere with the objectives of the securities laws." *Miller v. Interfirst Bank Dallas, N.A.,* 608 F.Supp. 169, 171 (N.D.Tex.1985).

■ In finding that in pari delicto was established in the Second Amended Complaint as a matter of Texas law, the District Court relied exclusively on this "regulatory" line of in pari delicto cases, *see Color Tile I,* 80 F.Supp.2d at 137–38, as did the parties in their briefs, even though the facts of the case at bar are not analogous to the facts in these cases. Our research has found no recent Texas case law on point.[11] Indeed, in *Kalb, Voorhis &*

---

**10.** In considering state securities fraud claims, *Banc One Capital Partners* stated that "[t]he test under Texas law for determining whether the *in pari delicto* defense applies does not appear to be contrary," but it cited only to Texas cases applying in pari delicto when the plaintiff engaged in an illegal transaction. *Banc One Capital Partners,* 67 F.3d at 1197.

**11.** An older line of Texas common-law indemnity cases held that no right of contribution existed between joint tortfeasors but as an exception permitted indemnity between them if they were not in pari delicto. In those cases, joint tortfeasors were found not to be in pari delicto if (1) each was liable to a third party on a qualitatively different theory of negligence; (2) either one breached a duty of care owed to the other; or (3) one tortfeasor was actively negligent while the other one was passively negligent. *See Hubbard v. Gehring,* 360 S.W.2d 787, 797–98 (Tex.1962); *Coastal States Crude Gathering Co. v. Williams,* 476 S.W.2d 339, 349–51 (Tex.Civ. App.1971). Even assuming the analogy between joint tortfeasors and the parties to this appeal is an appropriate one, the applicability

*Co. v. American Financial Corp.,* 8 F.3d 130 (2d Cir.1993)—a case not cited by the District Court or the parties—we previously applied the "regulatory" interpretation of in pari delicto as the law of Texas in concluding that a creditor of a bankrupt corporation had standing to sue the corporation's former controlling shareholder on a theory that the corporation and defendant were alter egos and that the corporate veil between the two should be pierced. In reaching this conclusion, we rejected the argument that the bankrupt corporation was in pari delicto with its controlling shareholder because the former participated with the latter in its self dealing. *Id.* With respect to the in pari delicto defense, we held that, "where the parties do not stand on equal terms and one party controls the other, the *in pari delicto* doctrine does not apply." *Id.* In so holding, we relied on our decision in *Ross v. Bolton,* 904 F.2d 819, 824 (2d Cir.1990), where we stated that: "Where both parties are *in delicto,* but not *in pari delicto,* a trial court should make findings regarding the respective amount of blame assigned to each, granting relief to the one whose wrong is less." *Kalb* cited no Texas case law in support of its decision to apply the "regulatory" interpretation of in pari delicto found in federal common law to a set of facts not arising in the regulatory context.

■ Given the paucity of recent Texas authority applying the in pari delicto de-

fense to facts such as those giving rise to this appeal, we decline to endorse the interpretation of that defense applied by the District Court and briefed by the parties. We will nevertheless review the District Court's analysis by applying that interpretation because the parties have not urged us to apply a different one and because we can find no Texas authority clearly repudiating or endorsing it. As they have done with their contract-related argument discussed above and for similar reasons, Color Tile Committee has thus waived its argument that the District Court's formulation of Texas' in pari delicto defense is incorrect. *But cf. Thompson v. County of Franklin,* 314 F.3d 79, 84 (2d Cir.2002) (Winter, J., concurring in the judgment) (declining to decide appeal based on clearly incorrect legal stipulation of federal law by the parties on the ground that doing so would be tantamount to issuing an advisory opinion).

2. *Did Color Tile Have at Least Substantially Equal Responsibility With Coopers?*

■ Turning to the District Court's conclusion that the in pari delicto affirmative defense was established as a matter of Texas law by the facts pled in the Second Amended Complaint, we agree with the District Court that Color Tile, through its Board and controlling shareholders, bore "at least substantially equal responsibility

of the definition of in pari delicto found in these older cases is not so clear, however. First, since these cases were decided, common-law indemnity in Texas has been abolished, except in cases where a defendant's liability is purely vicarious. *See B & B Auto Supply, Sand Pit, & Trucking Co. v. Cent. Freight Lines, Inc.,* 603 S.W.2d 814, 817 (Tex. 1980); *St. Anthony's Hosp. v. Whitfield,* 946 S.W.2d 174, 177–78 (Tex.App.1997). Second, liability among joint tortfeasors is now largely governed by the Texas Proportionate Responsibility Act discussed above. That statute now

provides that joint tortfeasor liability is calculated based on proportionate fault, but that liability shall be joint and several to joint tortfeasors whose percentage of responsibility is greater than fifty percent. Tex. Civ. Prac. & Rem.Code Ann. §§ 33.001, 33.013. Thus, Texas courts have not had the opportunity to address the in pari delicto defense in a joint tortfeasor or indemnity context for some time, and they might approach the issue differently in light of this proportional responsibility statute and the relative demise of common-law indemnity.

with Coopers for permitting [the Transaction] to go forward on the basis of inflated projections." *Color Tile I*, 80 F.Supp.2d at 138. In particular, the Color Tile Board unanimously approved the Transaction, notwithstanding the Management Directors' express warning that "the purchase price was grossly excessive, the projections supporting the Transaction were unrealistic and exaggerated, and the Transaction would impose an imprudent and unmanageable debt structure on Color Tile." Moreover, the Second Amended Complaint alleges that Coopers either deliberately or negligently failed to advise the Board about what the Board already knew. Thus, since the Board allegedly had the same knowledge that Coopers allegedly should have disclosed, the pleadings established at least equal fault on the part of the Board. With respect to Color Tile's controlling shareholders—the Investcorp Group—the Second Amended Complaint is strewn with allegations establishing that the Investcorp Group was responsible for every detail of the Transaction from the decision to purchase the ABF assets, to "dictating the terms and the price that Color Tile paid for the ABF assets," to dictat[ing] the terms of the high-interest bond offering, to finally "dominat[ing] Color Tile's board of directors and forc[ing] Color Tile to consummate the Transaction." Consequently, Color Tile Committee's pleadings also established that Color Tile's controlling shareholders were at least equally at fault with Coopers.

On appeal, Color Tile Committee raises several challenges to the District Court's conclusion that in pari delicto was estab-lished as a matter of law in the Second Amended Complaint, none of which we find persuasive.

### a. *Dismissal at the Pleadings Stage*

■ Color Tile Committee first argues that, under Texas law, in pari delicto can never be established on the pleadings because issues of relative fault are "quintessential" fact questions for the jury. Color Tile Committee cites no Texas cases on point in support of this position.[12] Indeed, this Court has affirmed the dismissal of breach of fiduciary duty claims on the pleadings upon findings that in pari delicto had been established in the complaints. *See In re Mediators*, 105 F.3d 822; *Hirsch*, 72 F.3d 1085. Consequently, there was nothing inherently wrong with the District Court's dismissal of the pleadings on in pari delicto grounds.

### b. *Adverse Interest Exception/Sole Actor Rule*

■ Color Tile Committee next argues that the District Court improperly attributed the misconduct of Color Tile's controlling shareholders, the Investcorp Group, to Color Tile because the Investcorp Group's interests were adverse to Color Tile's. *See Askanase v. Fatjo*, 130 F.3d 657, 666 (5th Cir.1997) (knowledge and actions of a corporation's agent will not be imputed to the corporation if the agent was "acting adversely to the corporation and entirely for his own or another's purpose" so that the agent's "endeavors are so incompatible that they destroy the agency").[13] This argument also lacks mer-

---

12. The Texas cases cited by Color Tile Committee involved the scope and nature of the factual inquiry conducted by the jury after the in pari delicto defense had been submitted to the jury, *see Banc One Capital Partners Corp. v. Kneipper*, 67 F.3d 1187, 1197 (5th Cir. 1995); *Prude v. Campbell*, 85 Tex. 4, 19 S.W.

890, 892 (1892), and not whether these cases should have been submitted to the jury in the first instance.

13. *See also Goldstein v. Union Nat'l Bank*, 109 Tex. 555, 213 S.W. 584, 590–91 (1919) (noting the test is "not whether there is some

it. As the District Court correctly noted, where, as here, "the persons dominating and controlling the corporation orchestrated the fraudulent conduct, their knowledge is imputed to the corporation as principal" under the "sole actor" rule, which negates the adverse interest exception when the principal and agent are one and the same. *Color Tile I*, 80 F.Supp.2d at 138 (citing *In re Mediators*, 105 F.3d at 827; *Ernst & Young*, 967 F.2d at 171). "This rule imputes the agent's knowledge to the principal notwithstanding the agent's self-dealing because the party that should have been informed was the agent itself albeit in its capacity as principal." *Mediators*, 105 F.3d at 827.

Relying on precedents applying the sole actor rule from this Circuit, Color Tile Committee argues that the sole actor rule does not apply here principally because there were relevant decision makers who were not engaged in the fraud and who would have stopped the Transaction if they had known of Coopers' Negative Conclusions. In particular, the Second Amended Complaint alleges that, if the Management Directors had known of the Negative Conclusions, they "could and would have [prevented the Transaction from closing] by going outside the company" and informing the company's underwriter and lenders, neither of which "would have sold the

notes or otherwise financed the Transaction in the face of" Coopers' Negative Conclusions.

We initially note that the Second Circuit precedents cited by Color Tile Committee did not apply Texas law, so they are not dispositive here. Moreover, in *Ernst & Young*, the Fifth Circuit rejected a similar argument made by the assignee of a bankrupt corporation's trustee, which was suing the company's outside accountants for negligently auditing the company. The court found that, as a matter of law, the corporation could not have been misled by the auditor's failure to disclose certain negative financial information about the company because the company's sole shareholder committed the fraud that was the cause of the company's dire financial situation and his knowledge of the fraud was imputed to the corporation under the sole actor rule. 967 F.2d at 171. The assignee then argued that the accounting firm's negligence still could have caused losses to the company because, "had the audits been accurate, someone, such as [the company's] creditors or government regulators, would have 'rescued'" the company. *Id.* The Fifth Circuit responded that this argument was "flawed" because the company could not claim that "it should recover from [the accounting firm] for not being rescued by

---

slight adverse interest" between the corporation and its agent but whether "under all the circumstances of the particular case, the agent's interests are so incompatible with the interests of his principal as practically to destroy the agency or to render it reasonably probable that an ordinary person, in the agent's position, under such circumstances, will neither act, in behalf of his principal, upon his so acquired knowledge, nor disclose that knowledge to his principal, but, because of such incompatibility in interests, will withhold such knowledge from the principal").

More recently, Texas law has been construed to hold that, when the majority of a corporation's board of directors is made up of

interested directors, the officers/directors' misconduct must be intentional; negligence and even a breach of a fiduciary duty are not sufficient to invoke the "adverse interest" exception. *Askanase*, 130 F.3d at 666; *Resolution Trust Corp. v. Acton*, 49 F.3d 1086, 1090–91 (5th Cir.1995); *FDIC v. Dawson*, 4 F.3d 1303, 1312 (5th Cir.1993); *Resolution Trust Corp. v. Bright*, 872 F.Supp. 1551, 1565 (N.D.Tex.1995). Thus, although we ultimately dispose of the adverse interest exception by invoking the sole actor rule, we note that the exception might not apply given the absence of allegations that the Investcorp Group Defendants' conduct was intentional.

a third party for something [the company] was already aware of and chose to ignore." *Id.* Likewise, Color Tile Committee alleged that the Management Directors approved the Transaction knowing that the purchase price and the debt were excessive, and thus the possibility that Color Tile's creditors or underwriter would have "rescued" Color Tile if informed of the Negative Conclusions is legally irrelevant. Accordingly, the District Court properly concluded that the sole actor rule negated the applicability of the adverse interest exception.

### c. *Pleading in the Alternative*

■ Color Tile Committee next argues (for the first time on appeal) that the claims against the Investcorp Group Defendants are irrelevant to the claims against Coopers and thus the former's knowledge and conduct should not be considered when analyzing the legal sufficiency of the claims against Coopers under some form of alternative pleading analysis. In particular, Color Tile Committee relies on our decisions in *Adler v. Pataki,* 185 F.3d 35 (2d Cir.1999), *Henry v. Daytop Village, Inc.,* 42 F.3d 89 (2d Cir.1994), and *MacFarlane v. Grasso,* 696 F.2d 217 (2d Cir.1982), for the proposition that allegations that are not explicitly pled as alternative claims should be construed as alternative claims.

Because this argument (like the arguments above concerning the applicability of in pari delicto to breach of contract claims) is being raised for the first time on appeal,

we decline to consider it. *See Baker v. Dorfman,* 239 F.3d 415, 420–21 (2d Cir. 2000). Color Tile Committee had the opportunity to raise this argument before the July 31, 1998 dismissal of the First Amended Complaint and before the November 18, 1999 dismissal of the Second Amended Complaint, but chose not to do so. Indeed, in response to the dismissal of the First Amended Complaint, Color Tile Committee chose to pursue an opposite course of action: it pled additional facts to portray the Management Directors as quasi-independent actors who insulated Color Tile from the Investcorp Group Defendants' misfeasance; it persisted in building its case against Coopers with the case against the Investcorp Group Defendants as a foundation. Having elected not to undermine its case against the Investcorp Group Defendants by pleading in the alternative and then having failed to prove the latter's liability on the relevant claims, Color Tile Committee should not be permitted at this late date to proclaim that its unsuccessful allegations against the Investcorp Group Defendants were in the alternative to those against Coopers. Accordingly, we decline to reach this argument under the waiver doctrine articulated above.[14]

### d. *Rule 54(b) Motion*

■ Finally, Color Tile Committee argues that the District Court erred in declining to grant its Rule 54(b) Motion to reconsider its dismissal of Color Tile Committee's breach of fiduciary duty claims and permit it to amend its complaint for

---

**14.** Our decision in *Adler* does not conflict with our finding that this argument has been waived. In *Adler,* the pleading-in-the-alternative argument did "appear to contradict [plaintiff's] initial litigation position before the District Court." *Adler,* 185 F.3d at 41. Color Tile Committee relies on this language to suggest that pleading-in-the-alternative arguments are not easily waived. But the *Adler*

court expressly relied on the plaintiff's prior assertions in the district court—both during the preliminary injunction hearing and in opposition to the defendant's motion for summary judgment—that the two motivations for dismissal should be read independently in permitting the plaintiff's claims to be read in the alternative. *Id.* Here, no such argument was ever raised below.

the third time in light of conclusions reached in the *Color Tile II* summary judgment decision. We find that this argument too lacks merit.

▓▓▓▓ Rule 54(b) provides, in relevant part, that, prior to entry of a final judgment, an interlocutory "order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties." Fed. R.Civ.P. 54(b). We have limited district courts' reconsideration of earlier decisions under Rule 54(b) by treating those decisions as law of the case, which gives a district court discretion to revisit earlier rulings in the same case, subject to the caveat that "where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again." *Zdanok v. Glidden Co.*, 327 F.2d 944, 953 (2d Cir.1964). Thus, those decisions may not usually be changed unless there is "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent a manifest injustice." *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir.1992) (internal quotation marks omitted). We review for abuse of discretion a district court's denial of the Rule 54(b) motion and its denial of leave to amend a complaint. *Local 802, Associated Musicians v. Parker Meridien Hotel*, 145 F.3d 85, 89 (2d Cir.1998) (leave to amend); *Virgin Atl. Airways*, 956 F.2d at 1254–55 (Rule 54(b) motion).

The "new evidence" or "intervening change of controlling law" that Color Tile Committee referenced in support of its Rule 54(b) argument were "findings" in the *Color Tile II* decision that the Investcorp Group Defendants' "interests were fully aligned with Color Tile's, they did not act adversely to Color Tile, and hence they did not breach any fiduciary duties to Color Tile," and that the "Management Directors were not 'forced' to approve the [Transaction] by [the Investcorp Group Defendants] and did not 'defer' to their wishes, but ultimately voted for the [Transaction] because they were persuaded that it was in the best interests of Color Tile." Thus, Color Tile Committee argues, neither the Investcorp Group Defendants nor the Color Tile Board engaged in any intentional wrongdoing in connection with the Transaction, and the in pari delicto defense could not be imputed to Color Tile. For the reasons outlined below, the District Court did not abuse its discretion.

▓▓▓ First, the allegations in the Second Amended Complaint are "judicial admission[s]" by which Color Tile Committee was "bound throughout the course of the proceeding." *Bellefonte Re Ins. Co. v. Argonaut Ins. Co.*, 757 F.2d 523, 528 (2d Cir.1985) (party cannot contradict its own pleading with affidavits); *see also Soo Line R.R. Co. v. St. Louis Southwestern Ry. Co.*, 125 F.3d 481, 483 (7th Cir.1997) ("plaintiff can plead himself out of court by alleging facts which show that he has no claim, even though he was not required to allege those facts" and "judicial efficiency demands that a party not be allowed to controvert what it has already unequivocally told a court by the most formal and considered means possible") (internal quotation marks omitted).

Second, there was no "new evidence." *Color Tile I* was decided in November 1999. All of the deposition testimony cited in *Color Tile II* to support a lack of wrongdoing on the part of the Investcorp Group Defendants was taken months before *Color Tile I* was decided. Thus, Color Tile Committee had access to the evidence before the order they sought to revise was entered and even used some of it in drafting the Second Amended Complaint. Accord-

ingly, the evidence was not "new" and it was "available" before the Second Amended Complaint was dismissed.

Third, there was no intervening law. The District Court never found as a matter of law in *Color Tile II* that the Investcorp Group Defendants were not in pari delicto with Coopers or that they were blameless. Rather, it applied the same substantive law that it had applied in previous rulings on the merits of the Second Amended Complaint and found that the Investcorp Group Defendants were entitled to the benefit of the business judgment rule because Color Tile Committee had failed to satisfy its summary judgment burden of presenting evidence to support its allegations that the Investcorp Group Defendants had breached their fiduciary duties to Color Tile. To be sure, there were facts proffered by the Investcorp Group Defendants tending to show that they were not so culpable, but those facts were not "found" by the District Court.

Fourth, there is no manifest injustice here. As noted above, the deposition testimony cited in *Color Tile II* to support a lack of wrongdoing on the part of the Investcorp Group Defendants was taken months before *Color Tile I* was decided. Thus, Color Tile Committee had the opportunity to bring its Rule 54(b) motion long before *Color Tile II* was decided. Doing so, however, would have undercut its arguments in opposition to the Investcorp Group Defendants' summary judgment motion. Color Tile Committee's decision not to file the Rule 54(b) motion until after summary judgment was entered against it in *Color Tile II* was a strategic one. Denying Color Tile Committee yet another bite at the apple because this strategy ultimately failed certainly cannot be characterized as manifestly unjust, especially given the subsequent $30 million settlement with the Investcorp Defendants.

Finally, the District Court did not abuse its discretion in denying Color Tile Committee leave to amend the complaint because there was a "repeated failure to cure deficiencies by amendments previously allowed." *Dluhos v. Floating & Abandoned Vessel, Known as "New York"*, 162 F.3d 63, 69 (2d Cir.1998); *see also Hirsch*, 72 F.3d at 1096; *Salinger v. Projectavision, Inc.*, 972 F.Supp. 222, 236 (S.D.N.Y. 1997) ("Three bites at the apple is enough.").

### III. *Remaining Arguments*

We have considered the remaining arguments raised by the parties and find them to be without merit.

### CONCLUSION

For the foregoing reasons, the judgment of the District Court is affirmed.